**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2017-NMCA-036**

**Filing Date: February 2, 2017**

**Docket Nos. 34,257 and 34,564 (consolidated)**

**COLETTE C. JURY,**

> **Petitioner-Appellant,**

**v.**

**VICTOR R. JURY,**

> **Respondent-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Deborah Davis Walker, District Judge**

Caren I. Friedman
Santa Fe, NM

Bishop Law P.C.
Julie Bishop
Albuquerque, NM

for Appellant

Kerry Kiernan, P.C.
Kerry Kiernan
Albuquerque, NM

for Appellee

**OPINION**

**WECHSLER, Judge.**

**{1}** This case arises from the district court's denial of Petitioner Colette C. Jury's motion to modify the child support decree (the 2010 decree) that resulted from the dissolution of the marriage between Petitioner and Respondent Victor R. Jury. After considering evidence of the parties' updated financial information, the district court ruled that the 2010 decree was

not subject to modification because neither party demonstrated material and substantial changes in circumstances affecting the welfare of the children.[1]

**{2}** Petitioner claims that the district court's ruling resulted from its erroneous determination of the parties' gross monthly incomes and, by extension, child support obligations. Respondent argues that, even if the district court miscalculated the parties' gross monthly incomes, its determination that no material and substantial changes in circumstances affecting the welfare of the children occurred is dispositive.

**{3}** District courts have discretion to deviate from the child support guidelines, NMSA 1978, § 40-4-11.1 (2008), as provided in NMSA 1978, Section 40-4-11.2 (1989). However, such discretion does not extend to the process of calculating the parties' gross monthly incomes. Calculation of the parties' gross monthly incomes must conform to the child support guidelines or precedential appellate court interpretation of the child support guidelines. Therefore, to the extent that the district court improperly deviated from the child support guidelines in calculating the parties' gross monthly incomes, we reverse and remand for recalculation.

**{4}** We recognize, however, that recalculation alone does not resolve the central issue raised on appeal. Petitioner asks this Court to conclude that changes in income indicated by the parties' updated financial information entitled her to a modification of the 2010 decree as a matter of law. Because the testimony and evidence offered at trial does not support a modification at common law, we are unable to so conclude. However, if recalculation of the parties' gross monthly incomes results in a deviation upward of more than twenty percent of the existing child support obligation, Petitioner is entitled to "a presumption of material and substantial changes in circumstances" as provided by NMSA 1978, Section 40-4-11.4(A) (1991).

**{5}** The district court's deviation from the child support guidelines in calculating the parties' gross monthly incomes potentially deprived Petitioner of a presumption of material and substantial changes in circumstances to which she was entitled as a matter of law. If, on remand, the district court's recalculation of the parties' gross monthly incomes results in a presumption of material and substantial changes in circumstances under Section 40-4-11.4, the district court shall reconsider whether Petitioner is entitled to a modification of the 2010 decree in light of this opinion.

**{6}** Petitioner additionally argues that the district court lacked evidence to support its prospective reduction of the amount of child support awarded in the 2010 decree. Respondent argues that the reduction was appropriate but agrees that the district court's failure to articulate how it determined the recalculated amount requires remand. Because

---

[1]Respondent also filed a motion to modify the 2010 decree, which was denied. Respondent does not appeal this denial.

2

Respondent agrees that error occurred, we decline to provide additional legal analysis. On remand, the district court shall determine whether, and to what extent, the 2010 decree was subject to modification given the changes in circumstances occurring on or around June 1, 2015.

{7}    Because our reversal and remand undermines the district court's rationale for awarding certain attorney fees, such awards to Respondent in the amounts of $15,000 and $750 are reversed. However, we affirm the district court's award of attorney fees arising from post-judgment proceedings in the amount of $1,500 to Respondent.

## BACKGROUND

### A.    The 2010 Decree

{8}    On September 11, 2006, Petitioner filed a petition to dissolve her marriage to Respondent. The district court's February 22, 2010 judgment and order finalized numerous matters between the parties, including the child support obligation. At the time of the 2010 decree, the parties had two minor children of the marriage, ages thirteen (Son) and nine (Daughter). Respondent derived the majority of his income from his employment at, and shareholder interest in, Summit Electric Co., Inc. (Summit Electric) and his shareholder interest in Jury & Associates, LLC (Jury & Associates). Petitioner did not work outside the home.

{9}    Substantial testimony and evidence related to the parties' income and financial resources was offered at trial. Exhibits 16 and 16A, which were filed as supplemental exhibits to the appellate record on July 14, 2016, appear to have featured prominently in the district court's 2010 determination. Exhibits 16 and 16A contained statements of Respondent's gross income, cash received, income taxes paid, and net income for the years 2001 through 2009. Applying the financial information in these exhibits, the district court concluded that Respondent had an "earning capacity" of $750,000 per year. In its ruling from the bench, the district court explained that $750,000 was not Respondent's actual gross annual income, but instead represented a conscious deviation downward. While discussing specific evidence of Respondent's then-current year earnings, the district court stated "I think, if anything, the $750[,000] is low."

{10}    After arriving at an annual income of $750,000, the district court subtracted $120,000 paid by Respondent to Petitioner in spousal support. It then divided the total amount by twelve, resulting in a gross monthly income for Respondent of $52,500.

{11}    The district court calculated Petitioner's income by combining her spousal support award and $4,000 per month of imputed earning capacity. It then divided the total amount by twelve, resulting in a gross monthly income for Petitioner of $14,000.

{12}    Having calculated the parties' combined gross monthly income to be $66,500, the

district court calculated the percentage of combined gross monthly income. It credited Respondent with seventy-nine percent of the parties' combined gross monthly income and Petitioner with twenty-one percent of the parties' combined gross monthly income.

**{13}** The district court then determined the basic child support obligation to be $10,707. Although the child support guidelines in effect in February 2010 did not allow for basic calculation of a combined gross monthly income of $66,500, the district court elected to apply the historical formula to determine the basic child support amount.[2]

**{14}** The district court also calculated the total child support obligation, the retained portion based upon custody, and the parties' individual child support obligations. The custodial calculation was based upon the children residing with Petitioner fifty-five percent of each month and residing with Respondent forty-five percent of each month. The district court calculated Petitioner's monthly obligation to be $1,518 and Respondent's monthly obligation to be $6,978. It reconciled these obligations to result in $5,460 owed by Respondent to Petitioner each month. It reduced this amount by twenty-one percent of additional expenses, including the cost of the children's health care insurance and private school tuition. After these reductions, Respondent's total monthly child support obligation was $4,872. In accordance with Section 40-4-11.4(B), the district court ordered that the parties exchange updated financial information each year. The merits of the 2010 decree are not on appeal or subject to reconsideration by this Court.

**B.       The 2014 Denial of the Parties' Motions to Modify the 2010 Decree**

**{15}** Respondent provided updated financial information to Petitioner on November 14, 2011. On December 6, 2011, Petitioner filed a motion to modify the 2010 decree based upon a "deviation upward of greater than twenty percent of the existing child support obligation[.]" Respondent filed a motion in opposition on April 16, 2013, as well as his own motion to modify the 2010 decree on January 7, 2014. He based his motion to modify the 2010 decree upon allegations of substantial changes in circumstances to the custodial time sharing and changes in the parties' incomes.

**{16}** On January 30, 2012, the district court appointed James W. Francis, CPA, as a Rule 11-706 NMRA expert in the case. He prepared a report that (1) analyzed the parties' 2011 gross incomes and (2) updated Exhibit 16A from the November 2009 trial with Respondent's

---

[2]Prior to the 2008 amendment of Section 40-4-11.1, the child support guidelines provided a formula for the calculation of basic child support to an infinite amount of combined gross monthly income. *See* § 40-4-11.1(K) (1995) (providing that "[f]or gross monthly income greater than $8,000, multiply gross by the following percentages: 11% [for one child,] 16.1% [for two children,] 18.8% [for three children] . . ."). Application of the pre-amendment formula to the parties' combined gross monthly income results in $10,707 per month.

4

financial information from 2009 through 2011.

**{17}** The trial was conducted between April 30, 2014 and May 2, 2014. Francis testified as to his conclusions about the district court's previous determination of Respondent's gross income, stating,

> [In 2009] the judge . . . took an average of the prior eight or nine years [of] after-tax cash income, averaged those out, and it came up to about $750,000. . . . The court then . . . subtracted from that $750,000, $120,000, which was the spousal support that [Respondent] was paying, $10,000 a month. That left a balance of $630,000, which the court divided by twelve, and said that [Respondent's] monthly income for child support purposes was $52,500. So, if the court were to follow the exact same model . . . [Respondent's] income for 2011, using the deviations that I described, would be $2,785,363. But that's just for 2011.

**{18}** Francis additionally testified that Respondent's 2011 gross income was comprised of salary from Summit Electric and pass-through earnings proportionate to his ownership shares in Summit Electric and Jury & Associates. On direct examination, counsel for Petitioner implied that the 2010 decree resulted from an improper application of the child support guidelines because the district court deducted income taxes paid from Respondent's gross income. Francis replied that pass-through income from certain corporate entities is, sometimes, subtracted from gross income by courts as cash not received by the party. On cross-examination, Francis agreed with counsel for Respondent that S-corporations frequently pass through profits to shareholders for the purpose of paying income taxes.

**{19}** The parties testified as to the welfare of their children, essentially agreeing that the children lack for nothing and are well provided for by both parents. The parties also agreed that Son, of his own volition, currently resided with Respondent full-time, but disputed the date on which this transition occurred. Based upon motions filed during 2012, the district court ruled that Son ceased residing with Petitioner in late 2011.

**{20}** The district court denied both parties' motions to modify the 2010 decree. As rationale for its denial, the district court offered the following statements:

> I did the best job I could [in 2009]. And I think it's very interesting to note that, according to the report that you both stipulated into evidence and you both essentially agreed with, number-wise, that [Respondent's] income after deduction for the tax payment was $711,562 [in 2009], and I put his income at $750,000. I think, all things considered, that was pretty close. I estimated that [Petitioner's] earning capacity, in addition to her spousal support, was about $4,000, based on the testimony that I heard and I think it's still at that point.

5

. . . .

And I said at the time, I don't want to see you back in a year, or two years. I knew that [Respondent] . . . by all accounts, he's a very capable businessman. He runs a very successful company. The income fluctuates up and down, through the last eleven years. There is a huge variation from year to year. So I was well aware at the time that I could pick a number and then the next year the numbers would be twice that much.

. . . .

Now, under the statute, and there was a quote from *Spingola* [*v. Spingola*, 1978-NMSC-045, 91 N.M. 737, 580 P.2d 958,] the court can only modify child support if there is a material and substantial change in circumstances which would, since the last order was entered, which would warrant the modification of the child support.

. . . .

I picked what I thought was a reasonable number [in 2009]. If [Petitioner] didn't like that number, she should have appealed at the time. I can't now go back and fix that number.

. . . .

[Petitioner] did argue that [Respondent's] income has increased. Maybe, maybe not. If you look at, you know, we don't even have the number for this year. I don't have the numbers for 2013. I don't even have the numbers for 2012; 2011, the numbers were good. And I'm looking . . . at the numbers that were calculated based on the method that was recently approved by the Court of Appeals in the *Clark* [*v. Clark*, 2014-NMCA-030, 320 P.3d 991] decision[.]

. . . .

If I look at 2011, it's one thing; if I look at the last three years, it's something; if I look at the last ten, it's one thing; if I look at the last eleven, it's something totally different. So I don't know if his income has gone up, because of . . . again, when a judge hears numbers from zero to a million, I have discretion to pick any number I want in that range. And there is evidence to support my decision. I thought under the circumstances a ten-year average was appropriate. So I arrived at income figure for [Respondent's] earning capacity at $813,463.

6

. . . .

If you take . . . the deduction for the spousal support, that brings it down to $693,463; that puts it at $57,788 a month, as opposed to $52,500 a month[.]
. . .

That's not to me something that is statistically significant. It's not a twenty percent change in his income. If we use the old worksheets, which I really don't want to do because there are no worksheets that apply to this current situation.

. . . .

But if we put this number on the old guidelines, there wouldn't be a twenty percent change in that bottom baseline child support amount.

. . . .

So basically, what I'm finding is that neither side carried his or her burden of proof to show that there's been a change, a substantial change materially affecting the welfare of the children. So we don't get to the cap issue. We don't get to the *Spingola* [, 1978-NMSC-045] analysis. Both motions are denied. The child support remains the same.

**{21}** The district court reiterated its rationale and the income calculation methodology in a subsequent hearing on May 16, 2014. That hearing resulted in an order, entered on June 10, 2014, which provided that (1) a hearing on attorney fees would be held on August 28, 2014 and (2) the parties must submit proposed findings of fact and conclusions of law as to all appellate issues within fifteen days after the hearing on attorney fees. Petitioner orally indicated that she would not appeal.

## C.    Attorney Fees and Findings of Fact and Conclusions of Law

**{22}** The August 28, 2014 hearing on attorney fees resulted in an award of $15,000 to Respondent. In support of its award, the district court stated, "[Petitioner's] initial motion was to increase child support. She did not get an increase in child support. [Respondent] prevailed on that issue. That's how I can decide [that Respondent is entitled to attorney fees]." Additionally, the district court's ruling included a reduction in Respondent's child support obligation, effective June 1, 2015, based on Son's pending eighteenth birthday and graduation from high school. Both parties indicated that they would not appeal.

**{23}** On September 30, 2014, the district court held a hearing to present the final order. During this hearing, Petitioner raised a perceived inconsistency between the district court's oral rulings on May 2, 2014 and August 28, 2014 and requested a deadline for findings of

7

fact and conclusions of law. The district court refused, stating, "We're done. I've already ruled. You've already stated on the record that nobody's appealing. We can't at this point." The district court entered separate orders on the merits and for attorney fees.

**{24}** On October 24, 2014, Petitioner filed a motion to reconsider numerous issues, including the district court's (1) denial of the motion to modify the 2010 decree on the merits; (2) sua sponte reduction of Respondent's child support obligation effective June 1, 2015; (3) award of attorney fees to Respondent; and (4) refusal to allow the submission of findings of fact and conclusions of law. The district court held a hearing on Petitioner's motion to reconsider on October 29, 2014. This hearing resulted in a partial grant and partial denial of Petitioner's motion. With respect to findings of fact and conclusions of law, the district court ruled that "[b]oth sides waived their right to submit findings and conclusions under Rule [1-052 NMRA] and pursuant to my [June 10, 2014] order." The district court awarded $750 in attorney fees to Respondent for defending the motion.

**{25}** Petitioner filed a timely appeal to this Court. During the pendency of this appeal, Respondent made efforts to depose Petitioner in accordance with Rule 1-069 NMRA and to gather information related to enforcement of the district court's award of attorney fees from other sources. Petitioner filed various motions seeking protection from Respondent's enforcement efforts. On February 2, 2015, the district court awarded Respondent $1,500 in attorney fees for costs incurred in defending Petitioner's motions and filing related motions. Petitioner appealed this award of attorney fees. Petitioner's two appeals were consolidated by order of this Court.

**STANDARD OF REVIEW**

**{26}** Child support determinations are made at the discretion of the district court and are reviewed for abuse of discretion. *Styka v. Styka*, 1999-NMCA-002, ¶ 8, 126 N.M. 515, 972 P.2d 16. That discretion, however, "must be exercised in accordance with the child support guidelines." *Id.* A district court abuses its discretion if "it applies an incorrect standard, incorrect substantive law, or its discretionary decision is premised on a misapprehension of the law." *Klinksiek v. Klinksiek*, 2005-NMCA-008, ¶ 4, 136 N.M. 693, 104 P.3d 559 (internal quotation marks and citation omitted). In determining whether a deviation from the child support guidelines resulted from a mispprehension of law, we apply de novo review. *Id.*

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**{27}** As an initial matter, we address the notable absence of findings of fact and conclusions of law supporting the district court's ruling. Neither Petitioner nor Respondent requested or submitted proposed findings of fact or conclusions of law prior to the district court's deadline of September 12, 2014. Rule 1-052(A) provides that "[i]n a case tried by the court without a jury, . . . the court shall enter findings of fact and conclusions of law when a party makes a timely request." As a general rule, a party's failure to make such a request

within ten days, or as otherwise ordered by the district court, operates as a waiver of the right to specific findings of fact and conclusions of law. *See* Rule 1-052(B); *Wagner Land & Inv. Co. v. Halderman*, 1972-NMSC-019, ¶¶ 7, 11, 83 N.M. 628, 495 P.2d 1075. However, the absence of findings of fact and conclusions of law does not operate as a bar to appellate review. *See Rio Grande Sun v. Jemez Mountains Pub. Sch. Dist.*, 2012-NMCA-091, ¶ 22, 287 P.3d 318 ("Rule 1-052 was rewritten in 2001, and the current version omits reference to preservation of error as this is a matter for the appellate rules." (internal quotation marks and citation omitted)). Petitioner argues on appeal that the district court's misapprehension of Section 40-4-11.1 resulted in its conclusion that the 2010 decree was not subject to modification and asserts that the 2010 decree is subject to modification as a matter of law. This Court may review Petitioner's arguments on the record before us.

## APPLICATION OF THE CHILD SUPPORT GUIDELINES AND RELATED STATUTES

### A.    Determination of Child Support Obligations

**{28}**    The codification of child support guidelines arose in response to a lack of uniformity of support awards across the country. Charles J. Meyer et al., *Child Support Determinations in High Income Families—A Survey of the Fifty States*, 28 J. Am. Acad. Matrim. Law. 483, 484-85 (2016). In 1988, our Legislature enacted Section 40-4-11.1, which significantly limited the discretion of the district courts in making determinations of child support obligations. *See Perkins v. Rowson*, 1990-NMCA-089, ¶ 13, 110 N.M. 671, 798 P.2d 1057 ("[I]t is apparent that Section [40-4-]11.1 is a substantial change in the substance of the law, and a significant restriction of the trial court's formerly broad discretion in determining the amount of a parent's support obligation."); *see also Leeder v. Leeder*, 1994-NMCA-105, ¶ 6, 118 N.M. 603, 884 P.2d 494 ("[T]he guidelines are presumed to provide the proper amount of child support[.]"). The scope of this limitation is expressed in Section 40-4-11.1(A), which states, in pertinent part, "[i]n any action to establish or modify child support, the child support guidelines . . . *shall* be applied to determine the child support due . . . Every decree or judgment of child support that deviates from the guideline amount *shall* contain a statement of the reasons for the deviation." (Emphasis added.)

**{29}**    While "deviation from the child support guideline *amounts* set forth in Section 40-4-11.1" is permitted, no such deviation is authorized with respect to the district court's calculation of the parties' gross monthly incomes. Section 40-4-11.2 (emphasis added); *see* § 40-4-11.1(C)(2), (K) (describing the inputs and methodology used to calculate gross income for purposes of determining child support obligations). Section 40-4-11.1(C)(2) defines "gross income" as "income from salaries, wages, tips, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, significant in-kind benefits that reduce personal living expenses, prizes and alimony or maintenance received[.]" Certain sources of income, such as means-tested public assistance and child support payments received for other children,

9

are exempted from gross income. Section 40-4-11.1(C)(2)(a). Certain expenditures, such as spousal and child support actually paid, result in a reduction of gross income. Section 40-4-11.1(C)(2)(c), (d).

**{30}** In circumstances in which income is derived from proprietorship of a business or joint ownership of a partnership or closely held corporation, " 'gross income' means gross receipts minus ordinary and necessary expenses[.]" Section 40-4-11.1(C)(2)(b). As a practical matter, this Court is "more concerned with a parent's actual cash flow than we are with income as represented on tax returns." *Major v. Major*, 1998-NMCA-001, ¶ 5, 124 N.M. 436, 952 P.2d 37. An example of this "actual cash flow" principle arose in *Clark*, in which this Court concluded that "Subchapter-S corporation funds actually distributed to the shareholder-spouse must be attributed to the shareholder-spouse as [gross] income" unless the distribution "was used for business purposes or to offset the payment [of] income taxes resulting from any K-1 allocations." 2014-NMCA-030, ¶ 12. The rationale underlying *Clark*—that cash passed to a shareholder for the express purpose of paying income taxes is not "available to apply toward the support of [the] children"—is consistent with our child support jurisprudence. *Major*, 1998-NMCA-001, ¶ 9. To a certain extent, allowing for the deduction of taxes paid on K-1 allocations muddles the definition of "gross income" in Section 40-4-11.1(C). However, taxes paid on W-2 earnings are not deducted from gross income for purposes of calculating child support obligations. *See Boutz v. Donaldson*, 1999-NMCA-131, ¶ 25, 128 N.M. 232, 991 P.2d 517 ("We can discern no clear intent in the statute to consider hypothetical tax consequences of reported income before it is inserted into the child support tables. From a survey of the statutory language used in defining 'gross income,' we see that the Legislature has included all kinds of income without any express regard for the varying effect of taxes.").

**{31}** Just as Section 40-4-11.1(C) provides the sources of, and allowable deductions from, gross income, Section 40-4-11.1(K) provides temporal direction for calculating gross income, stating, "Use current income if steady. If income varies a lot from *month to month*, use an average of the last twelve months, if available, *or last year's income tax return*." (Emphasis added.) Our appellate interpretations are consistent with the statutory language. *See Spingola*, 1978-NMSC-045, ¶ 13 (holding that a child support determination "requires that evidence of [an obligor's] *current* financial resources be fully considered" (emphasis added)); *Boutz*, 1999-NMCA-131, ¶ 10 (holding that it was error to use "income from other than the year in question"). While no New Mexico appellate court has expressly considered the appropriateness of multi-year averaging, other jurisdictions allow multi-year averaging when self-employment or business income is subject to fluctuation. *See, e.g.*, *In re Marriage of Garrett*, 785 N.E.2d 172, 178 (Ill. App. Ct. 2003) (affirming the district court's use of a three-year average of self-employment income as a physician); *Roberts v. Roberts*, 924 So. 2d 550, 553 (Miss. Ct. App. 2005) (affirming the district court's use of a three-year average of self-employment income from pharmaceutical sales); *Gress v. Gress*, 743 N.W.2d 67, 74-75 (Neb. 2007) (affirming the district court's use of a three-year average of self-employment income from farming and stating "it appears that both here and elsewhere, a [three]-year average tends to be the most common approach in cases where a parent's income tends to

fluctuate [and] even among the jurisdictions which permit an average of more than [three] years, courts appear reluctant to use more than a [five]-year average"); *see also Zimin v. Zimin*, 837 P.2d 118, 123 (Alaska 1992) (affirming the district court's use of current self-employment income from commercial fishing and stating "although income averaging is clearly appropriate [when income fluctuates], a ten-year average is generally not a reliable indicator of an obligor parent's current earning capacity").

**{32}** After calculating each party's gross monthly income, that amount is combined and entered into Section 40-4-11.1(K), Worksheet B. Using the parties' combined gross monthly income and each party's percentage of combined income, the district court must determine the basic monthly support by reference to the basic child support schedule. Section 40-4-11.1(K). The basic child support schedule provides the presumptive amount of child support for combined gross monthly income up to $30,000. Section 40-4-11.1(A), (K). Unlike other jurisdictions, our Legislature has not specifically authorized district courts to use discretion in calculating child support obligations when gross monthly income exceeds the maximum amount on the basic child support schedule. *Cf.* Colo. Rev. Stat. § 14-10-115(7)(E) (2016) ("The judge may use discretion to determine child support in circumstances where combined adjusted gross income exceeds the uppermost levels of the schedule of basic child support obligations[.]"); *see also* Meyer, *supra*, at 500 n.68 (noting that "New Mexico does not have any high income instruction"). In the absence of direction from our Legislature with respect to the calculation of child support obligations when the parties' combined gross monthly income exceeds $30,000, we presume that a district court retains broad discretion.[3] *See Peterson v. Peterson*, 1982-NMSC-098, ¶ 9, 98 N.M. 744, 652 P.2d 1195 ("Child support determinations are an area of the law in which trial court are allowed broad discretion."). As such, if the parties' combined gross monthly income exceeds $30,000, the district court must determine the basic monthly support after considering

> [(1)] the total financial resources of both parents, including their monetary obligations, income, and net worth; [(2)] the life-style the children would be enjoying if the father and the mother were together and the non-custodial parent had his [or her] present income level; and [(3)] whether the income, surrounding financial circumstances, and station in life demonstrated an ability by the father [or mother] to provide additional advantages to [their] children above their actual needs.

_____

[3]Relevant legal scholarship indicates that enacted child support guidelines provide a presumptive minimum amount of child support in high-income scenarios. *See* Laura W. Morgan, *The High-Income Parent, Child Support Guidelines Interpretation & Application* § 8.07 (2016) ("[W]here the guidelines do not contain an express formula, some states use a presumption that the highest amount provided for in the guidelines is the correct amount. . . . [T]hese states allow deviation. Thus, a court must first presumptively determine support as the highest amount provided in the guidelines, but the court may deviate upward from the presumed amount based on the specific needs of the child[.]" (emphasis added)).

11

*Padilla v. Montano*, 1993-NMCA-127, ¶ 36, 116 N.M. 398, 862 P.2d 1257 (citing *Spingola*, 1978-NMSC-045, ¶ 24).

**{33}** After calculating the basic monthly support, whether using the basic child support schedule or otherwise, the district court must continue to apply Worksheet B of Section 40-4-11.1 to determine (1) the amount transferable from the obligor to the obligee and (2) any reduction of this amount based upon the obligee's contribution to health and dental premiums, work-related child care, and extraordinary costs including, but not limited to, extraordinary medical, dental, and counseling costs, extraordinary educational expenses, and transportation and communication expenses necessary to implement custodial arrangements. Section 40-4-11.1(H), (I), (K). The previously determined percentage of combined income figures prominently in this series of calculations. *See* § 40-4-11.1(K) (applying the percentage of combined income to determine each party's share of the basic monthly support and each party's share of additional payments and expenses).

**{34}** Numerous precedential opinions hold that a district court's failure to calculate gross income as per Section 40-4-11.1(A) and Section 40-4-11.1(K) is error. For example, in *Boutz*, the obligor's gross income included dividend earnings from investments that fluctuated from year to year. 1999-NMCA-131, ¶ 9. At trial, the district court rejected evidence indicating the amount of dividend earnings in the first half of 1996 and instead used dividend earnings from 1995. *Id.* This Court concluded that the use of 1995 dividend earnings was error. *Id.* ¶ 10. In so holding, we noted that "[t]he [district] court did not explain its . . . reliance on what was arguably stale information" and that the error was compounded by the district court's use of 1996 income calculations for the obligee. *Id.* ¶¶ 9-10; *see also id.* ¶ 10 ("Calculating [the parties'] dividend earnings by different methods violates one of the express goals of the statute: making awards more equitable[.]" (alteration, internal quotation marks, and citation omitted)). Similarly, in *Klinksiek*, the district court excluded rental income from the obligee's gross income. 2005-NMCA-008, ¶ 2. This Court reversed, holding that Section 40-4-11.1(C)(2) requires calculation of "income from any source." *Klinksiek*, 2005-NMCA-008, ¶¶ 7, 12. Additionally, in *Tedford v. Gregory*, the petitioner filed for retroactive child support from her alleged natural father. 1998-NMCA-067, ¶ 1, 125 N.M. 206, 959 P.2d 540. The district court awarded petitioner $50,000 but failed to explain how it calculated that amount. *Id.* ¶ 32. This Court reversed, holding that "the [district] court should first determine both the mother's and the father's income during the applicable time periods [and s]uch findings should be made before applying any deviation from the standard child support guidelines." *Id.* ¶¶ 31, 34.

**{35}** In summary, *Klinksiek* and *Boutz* hold that a district court may not deviate from Section 40-4-11.1 in calculating the parties' gross incomes. *Klinksiek*, 2005-NMCA-008, ¶ 7; *Boutz*, 1999-NMCA-131, ¶ 10. *Boutz* additionally implies that the district court must, to the degree possible, calculate the parties' gross incomes during the same time period. 1999-NMCA-131, ¶ 10. *Clark* and *Boutz* outlined the intersection between gross income and income taxes in the child support context. *Clark*, 2014-NMCA-030, ¶ 12; *Boutz*, 1999-NMCA-131, ¶ 25. And *Tedford* clarified that gross income must be calculated prior to any

12

allowable deviations from the child support guidelines. 1998-NMCA-067, ¶ 31. These holdings, along with the plain language of the relevant statutes, guide our analysis of the present case.

## B.      Deviation From the Child Support Guidelines

**{36}**     Section 40-4-11.2 provides that "[a]ny deviation from the child support guideline *amounts* set forth in Section 40-4-11.1 . . . shall be supported by a written finding in the decree, judgment or order of child support that application of the guidelines would be unjust or inappropriate." (Emphasis added.) As we have already clarified, it is error to deviate from the child support guidelines in calculating the parties' gross incomes except as authorized by statute or appellate case law. However, it is also error to deviate from the child support guidelines in any manner without providing written justification for such deviation. *See* § 40-4-11.2; *Tedford*, 1998-NMCA-067, ¶ 33 ("[W]e conclude that the trial court erred . . . in failing to specify the reasons for the trial court's decision in deviating from the child support guidelines."). As indicated in Section 40-4-11.2, acceptable reasons for deviation include circumstances in which "application of the guidelines would be unjust or inappropriate" as indicated by "substantial hardship in the obligor, obligee or subject children[.]"

## C.      Modification of Child Support Obligations

**{37}**     A district court may modify a child support obligation upon a showing of material and substantial circumstances subsequent to the adjudication of the pre-existing child support order. Section 40-4-11.4(A). As indicated by our Supreme Court in *Spingola*, a petitioner must demonstrate a substantial change in circumstances affecting the welfare of the children to justify a modification. *See* 1978-NMSC-045, ¶ 16 ("The issue before the trial court on a petition to modify the amount of child support is whether there has been a showing of a change in circumstances. The change must be substantial, materially affecting the existing welfare of the child, and must have occurred since the prior adjudication where child support was originally awarded."). This requirement is referred to as "the traditional changed circumstances requirement" and governs the vast majority of child support modification determinations. *Perkins*, 1990-NMCA-089, ¶ 4.

**{38}**     However, in 1990, our Legislature enacted Section 40-4-11.4, which provided "a court may modify a child support obligation *without* showing material and substantial change in circumstances if application of the child support guidelines in Section 40-4-11.1 . . . would result in a deviation upward or downward of more than twenty percent of the existing child support obligation." (Emphasis added.) This Court limited Section 40-4-11.4 (1990), at least impliedly, in *Perkins*, which held that "a showing of a substantial change in circumstances is still required before the trial court can modify a parent's child support obligation." 1990-NMCA-089, ¶ 3. After *Perkins*, our Legislature amended Section 40-4-11.4 to provide that "[t]here shall be a presumption of material and substantial changes in circumstances if application of the child support guidelines in Section 40-4-11.1 . . . would result in a deviation upward or downward of more than twenty percent of the existing child

13

support obligation[.]" Section 40-4-11.4(A) (1991). This Court has subsequently viewed Section 40-4-11.4 to supersede *Perkins* and to abrogate the traditional changed circumstances doctrine under the circumstances contemplated. *See Boutz*, 1999-NMCA-131, ¶ 2 (concluding that a proposed increase of more than twenty percent in the father's child support obligation constituted a change in circumstances "sufficient in an amount to justify a court-ordered modification of child support").

**{39}** We conclude that *Boutz* is consistent with the legislative intent embodied in Section 40-4-11.4. "[T]he Legislature, as the policy-making branch of government, can alter or abrogate the common law[.]" *City of Albuquerque v. N.M. Pub. Regulation Comm'n*, 2003-NMSC-028, ¶ 16, 134 N.M. 472, 79 P.3d 297. Our Legislature has *twice* enacted legislation designed to limit the application of the traditional changed circumstances requirement in favor of determining a petitioner's entitlement to a modification based upon "a deviation upward or downward of more than twenty percent of the existing child support obligation[.]" *Compare* § 40-4-11.4 (1990), *with* § 40-4-11.4 (1991); *see also Rhinehart v. Nowlin*, 1990-NMCA-136, ¶ 56, 111 N.M. 319, 805 P.2d 88 (Hartz, J., concurring in part and dissenting in part) ("If the [L]egislature has spoken on a matter of public policy, the judiciary should respect that policy in matters of statutory interpretation and common-law jurisprudence."). As such, we reiterate that, in cases in which application of the parties' updated financial information to the child support guidelines results in a deviation upward or downward of more than twenty percent of the existing child support obligation, the party seeking modification is entitled to a presumption of material and substantial changes in circumstances justifying a modification.

**{40}** Of course, legal presumptions are generally rebuttable, and we agree with Respondent that the *Spingola* factors provide analytical support for denying a motion to modify child support even when application of Section 40-4-11.4(A) results in a presumption of material and substantial changes in circumstances justifying a modification. *See Spingola*, 1978-NMSC-045, ¶ 24 (providing considerations relevant to determinations of child support obligations, including "what life-style the children would be enjoying if the father and mother were not divorced and the non-custodial parent had [their] level of income" and the "ability of [a parent] to furnish additional advantages to his [or her] children above their actual needs"). For example, if the updated financial information resulted in the obligor's child support obligation increasing by twenty percent, but the obligee failed to offer any additional evidence justifying modification, the statutory presumption could be rebutted.

**{41}** However, *Spingola* also outlined principles that govern the use of judicial discretion on a motion to modify child support. These principles include "judicious consideration, honesty, common sense, and regular procedure *for arriving at an equitable solution for all*[.]" *Id.* ¶ 20 (emphasis added). This language indicates that determinations of child support obligations are intended to be equitable as between the parties. *See DeTevis v. Aragon*, 1986-NMCA-105, ¶ 26, 104 N.M. 793, 727 P.2d 558 (holding that issues of child support are subject to "a fair balancing of the equities in light of the best interests and welfare of the children"); *see also* § 40-4-11.2 (allowing deviation from the child support

14

guidelines if application "would be unjust or inappropriate").

**{42}** In summary, the child support guidelines limit the need for judicial discretion in the vast majority of child support determinations. However, Section 40-4-11.4 requires that the district court use discretion when faced with a statutory presumption of material and substantial changes in circumstances. *Spingola* limits this discretion. A child support determination must "arriv[e] at an equitable solution for all[.]" *Spingola*, 1978-NMSC-045, ¶ 20. Therefore, when faced with a presumption of material and substantial changes in circumstances arising under Section 40-4-11.4, a district court does not have discretion to deny modification of the existing child support obligation if doing so would perpetuate inequities as between the parties.

## THE DISTRICT COURT PROCEEDINGS AND RULING

### A. The Basic Child Support Amount

**{43}** Although the issue is not expressly raised on appeal, the district court's calculation of $10,707 as the basic amount of child support appears legally sound under the circumstances. Both parties testified at trial that the children are well-provided for. Petitioner testified that she "did not need more than [the adjusted amount of] $4,872" to provide for the children. In cases in which the parties' combined gross monthly income exceeds $30,000, the district court has discretion to calculate the appropriate basic child support amount, including by reference to the historical formula as occurred here. *Peterson*, 1982-NMSC-098, ¶ 9 ("Child support determinations are an area of the law in which trial court are allowed broad discretion.").

### B. *Spingola* Analysis

**{44}** In light of the testimony described immediately above, a *Spingola* analysis does not trigger a modification of the 2010 decree as a matter of law. We therefore disagree with Petitioner's argument that Respondent's "enhanced financial position" necessarily requires modification of the 2010 decree.

**{45}** *Spingola* holds that a "dramatic increase" in the obligor's income may imply a substantial change in circumstances and trigger a modification of child support. 1978-NMSC-045, ¶¶ 13-14. In so concluding, our Supreme Court noted that "[i]t is ridiculous to assume that the welfare of the children would not have improved considerably . . . [if] the father's income had doubled." *Id.* ¶ 13. However, in *Spingola*, the father's gross annual income increased from $42,000 to $87,000 over a period of three years. *Id.* ¶ 3. This increase in income resulted in a potential increase in the father's monthly child support obligation from $1,000 to $3,000. *Id.*

**{46}** Neither the level of income nor the proposed modification of the existing child support obligation in *Spingola* is analogous to the present case. In 1978, an additional $2,000

15

per month in child support certainly would have positively impacted the welfare of the parties' three children. This potential for positive impact is emphasized in the second and third *Spingola* factors that direct district courts to consider the "welfare" of the children in the context of (1) "what life-style the children would be enjoying if the father and mother were not divorced and the [father] had his present level of income" and whether (2) "the father demonstrates an ability . . . to furnish additional advantages to his children above their actual needs[.]" *Id.* ¶ 24. We are, however, unable to conclude that these factors weigh against Respondent in this case. Respondent's gross income appears to have increased substantially from the $750,000 calculated for purposes of the 2010 decree. But Respondent provides child support, after adjustments, of $4,872 each month for his two children. Petitioner testified at trial that her children "have far more privilege than the majority of children." Both she and Respondent testified as to the luxuries afforded to the children with respect to housing, education, travel, vehicles, and other material possessions. In *Spingola*, the father argued at trial and on appeal that his obligation to support his children extended only to "necessities." *Id.* ¶ 21. That is not the case here. Instead, we conclude that a *Spingola* analysis does not favor Petitioner's position on appeal under the circumstances of this case. *Cf. Downing v. Downing*, 45 S.W.3d 449, 456 (Ky. 2001) ("[N]o child, no matter how wealthy the parents, needs to be provided more than three ponies.").

## C.      Calculation of Gross Income

**{47}**      Although the district court has discretion to determine $10,707 as the basic child support amount, our review of the proceedings and record evidence reveals that the district court improperly deviated from the child support guidelines in its calculation of the parties' gross incomes for 2011. This miscalculation, which potentially deprived Petitioner of the "presumption of material and substantial changes in circumstances" provided by Section 40-4-11.4, constitutes an abuse of discretion requiring reversal and remand.

**{48}**      We discern three distinct issues with the district court's calculation of the parties' gross incomes: (1) the subtraction of taxes paid from Respondent's gross income; (2) the use of a ten-year average to calculate Respondent's gross income; and (3) the failure to calculate Petitioner's current income. We discuss each issue in turn.

### 1.      After Tax Income (Respondent)

**{49}**      Gross income is calculated using pre-tax income. *See* § 40-4-11.1(K) ("Gross Monthly Income: Includes all income[.]"); *Boutz*, 1999-NMCA-131, ¶ 25 ("We can discern no clear intent in the statute to consider hypothetical tax consequences of reported income before it is inserted into the child support tables."). However, in its May 2, 2014 oral ruling, the district court expressly indicated that the 2010 decree was based upon Respondent's income after deduction of tax payments. For 2011, the district court gave no indication whether gross income was calculated pre- or post-tax in the present case, but it stated that it was "looking at the numbers that were calculated based on the method that was recently approved [in] *Clark*[.]" As discussed above, *Clark* held that funds distributed to a

16

shareholder constitute gross income unless they are used to "offset the payment [of] income taxes resulting from any K-1 allocations." 2014-NMCA-030, ¶ 12. While *Clark* justifies certain modifications to Respondent's gross income, we question the degree to which the district court may have done so. Petitioner's Exhibit One provides various financial data, including: "Respondent's Cash Received [From All Sources]," " Total Taxes Paid," and "After Tax Cash Income." Petitioner's Exhibit One differentiates between income received from Respondent's shareholder interests in Summit Electric and Jury & Associates and from salary. Petitioner's Exhibit One does not, however, differentiate between taxes paid on shareholder income and salary income. This differentiation is important given the distinction drawn above between the treatment of pass-through income used for payment of income taxes under *Clark* and the treatment of traditional W-2 earnings. For example, Petitioner's Exhibit One provides the following data for 2011: $4,219,841 of cash received from all sources; $1,434,478 of total taxes paid; and $2,785,363 of after tax cash income. Respondent's "After Tax Cash Income" results from subtracting $1,434,478 from $4,219,841. However, even applying *Clark*, this calculation incorrectly applies Section 40-4-11.1(K). "Cash Received [From All Sources]" details Respondent's 2011 earnings: $2,610,309 from his ownership interest in Summit Electric; $262,929 from his ownership interest in Jury & Associates; $1,014,055 from salary; and $332,548 from other income. The taxes paid on these four amounts are then blended together as "Total Taxes Paid." This calculation improperly combines income taxes paid on Respondent's income from his ownership interests in Summit Electric and Jury & Associates with income taxes paid on his income received as salary and other income. In short, any taxes paid that are attributable to Respondent's salary and other income must be incorporated into gross income.

## 2.      Multi-Year Averaging (Respondent)

**{50}**      Section 40-4-11.1(K) requires that gross income be calculated based on "current income if steady[,]" or, if not steady, by reference to "last year's income tax return." As discussed above, other jurisdictions allow multi-year averaging in cases in which the obligor's income fluctuates. However, we are aware of no other jurisdiction that permits the use of a ten-year average in calculating current income. *See Zimin*, 837 P.2d at 123 (stating "a ten-year average is generally not a reliable indicator of an obligor parent's current earning capacity"). In the present case, after stating that it did not have "the numbers for 2013" or "for 2012," the district court used a ten-year average to calculate Respondent's gross income, arriving at a total of $813,463 per year for 2011. Unfortunately, we are unable to recreate the district court's calculation using Petitioner's Exhibit One. Our ten-year average for the years 2002-2011 results in after tax cash income for Respondent of $976,155—a difference of more than $160,000 from the district court's total of $813,463. This disparity emphasizes the rationale behind requiring the district court to explain deviations from the child support guidelines in writing. *See Tedford*, 1998-NMCA-067, ¶¶ 32-33 (describing the failure to "clearly indicate" how it determined the child support award as error). Because we do not have the benefit of briefing on the topic, we decline to expressly decide whether and to what extent multi-year averaging is allowable when calculating a party's gross income for purposes of determining child support obligations. Absent such a decision, Respondent's

actual gross income for 2011 remains unclear. As such, on remand, the district court shall, in light of this opinion and other persuasive sources, make such a determination and clearly indicate in its order the exact calculations used in determining the parties' gross incomes.

### 3.  Current Income (Petitioner)

**{51}**  Section 40-4-11.1(C)(1) defines "income" as "actual gross income of a parent if employed to full capacity or potential income if unemployed or underemployed." This subsection empowers district courts to impute income as needed in order to accurately derive the parties' gross monthly incomes. *See State ex rel. Human Servs. Dep't v. Kelley*, 2003-NMCA-050, ¶ 13, 133 N.M. 510, 64 P.3d 537 ("The child support guidelines require the imputation of income to an unemployed or underemployed parent to the level of employment at full capacity."). In 2010, the district court estimated Petitioner's earning capacity to be $4,000 per month and continued to impute that amount in the present case. However, the record evidence includes Petitioner's 2011 tax returns. In 2011, Petitioner reported an adjusted gross income of $109,089 on her federal tax returns. Dividing $109,089 by twelve provides a more accurate gross monthly income for Petitioner than the amount imputed for the 2010 decree. We can discern no reason for the continued imputation of income when evidence of actual gross income has been provided. Because the district court calculated Respondent's gross annual income through 2011, Petitioner's 2011 tax return is the most appropriate source from which to determine Petitioner's gross income. *See Boutz*, 1999-NMCA-131, ¶ 10 (holding that the district court must, to the degree possible, calculate the parties' gross incomes during the same time period).

### D.  Inequities as Between the Parties

**{52}**  Because we do not have the benefit of a Rule 11-706 expert on appeal, we are unable to determine to any degree of certainty the extent to which recalculation of the parties' gross monthly incomes will affect Respondent's child support obligation. While $10,707 appears to be an appropriate basic child support amount, the district court could reconsider that amount on remand. Nevertheless, because the parties' gross monthly incomes and the percentage of combined income are non-discretionary determinations, we provide the following model to demonstrate the potential inequity that results from an incorrect calculation of gross income.

**{53}**  The 2010 decree, which applies Petitioner's gross annual income of $168,000 and Respondent's annual after-tax cash income of $750,000, operates as follows:

| **Part 1**  **Basic Support** | **Mother** | **Father** | **Combined** |
|---|---|---|---|
| 1.  Gross Monthly Income | $14,000 | $52,500 | $66,500 |
| 2.  Percentage of Combined Income | 21% | 79% | 100% |

| | | Mother | Father | Combined |
|---|---|---|---|---|
| 3. | Number of Children | | | 2 |
| 4. | Basic Support from Table | | | $10,707 |
| 5. | Shared Custody Basic Obligation | | | $16,060 |
| 6. | Each Parent's Share | $3,373 | $12,688 | |
| 7. | Number of 24 Hour Periods with Each Parent | 201 | 164 | 365 |
| 8. | Percentage with Each Parent | 55% | 45% | 100% |
| 9. | Amount Retained | $1,855 | $5,710 | |
| 10. | Each Parent's Obligation | $1,518 | $6,978 | |
| 11. | Amount Transferred | | $5,460 | |
| **Part 2** | **Additional Monthly Payments** | | | |
| 12. | Children's Health and Dental | | $300 | |
| 13. | Work-Related Child Care (NA) | | | |
| 14. | Additional Expenses (Tuition) | | $2,500 | |
| | Petitioner's Contribution (21%) | $588 | | |
| | Respondent's Actual (Transferred) Obligation | | $4,872 | |

{54}    If we recalculate for 2011 assuming that (1) $10,707 remains the basic child support amount, (2) Respondent's gross income is calculated using a post-tax three-year average for the years 2009, 2010, and 2011, which results in a total of $1,344,139,[4] and (3) Petitioner's gross income of $109,089 is determined using her 2011 tax returns, the impact on Respondent's child support obligation is as follows:

| **Part 1** | **Basic Support** | **Mother** | **Father** | **Combined** |
|---|---|---|---|---|
| 1. | Gross Monthly Income | $9,090 | $112,110 | $121,101 |

---

[4]The actual three-year average of $1,464,139 is reduced by $120,000 to account for spousal support paid by Respondent. It is not increased in consideration of the district court's deduction of taxes paid on W-2 earnings as discussed above.

19

| | | | | |
|---|---|---|---|---|
| 2. | Percentage of Combined Income | 8% | 92% | |
| 3. | Number of Children | | | 2 |
| 4. | Basic Support from Table (static) | | | $10,707 |
| 5. | Shared Custody Basic Obligation | | | $16,060 |
| 6. | Each Parent's Share | $1,284 | $14,775 | |
| 7. | Number of 24 Hour Periods with Each Parent | 201 | 164 | 365 |
| 8. | Percentage with Each Parent | 55% | 45% | 100% |
| 9. | Amount Retained | $706 | $6,648 | |
| 10. | Each Parent's Obligation | $578 | $8,127 | |
| 11. | Amount Transferred | | $7,549 | |
| **Part 2** | **Additional Monthly Payments** | | | |
| 12. | Children's Health and Dental | | $300 | |
| 13. | Work-Related Child Care (NA) | | | |
| 14. | Additional Expenses (Tuition) | | $2,500 | |
| | Petitioner's Contribution (8%) | $224 | | |
| | Respondent's Actual (Transferred) Obligation | | $7,325 | |

The $7,549 basic amount transferred represents a thirty-eight percent increase over Respondent's basic amount transferred of $5,460 in the 2010 decree. The $7,325 actual obligation represents a fifty percent increase over Respondent's total amount transferred of $4,872 in the 2010 decree. Such increases result in "a presumption of material and substantial changes" as contemplated by Section 40-4-11.4(A).

**{55}** We understand that these numbers are, to a degree, hypothetical. However, we believe that the impact on Petitioner's percentage of combined monthly income, which was twenty-one percent in the 2010 decree, requires consideration. This percentage has an obvious effect on each party's basic child support obligation. It also figures into the additional payments and expenses portion of Worksheet B. The 2010 decree required

Petitioner to pay twenty-one percent of the costs for the children's health and dental insurance and private school tuition. If Petitioner's gross monthly income actually amounts to approximately eight percent of the parties' combined gross monthly income, an order that results in Petitioner's overpayment is inequitable as between the parties.

**{56}**  At oral argument before this Court, Respondent argued that inequities arising from arguably incorrect percentages of combined income are mitigated by informal understandings between the parties. As an example, Respondent implied that increases in the children's tuition have gone unaccounted for since entry of the 2010 decree. This may be the case. However, a motion to modify child support focuses on the period between the previous adjudication and the filing of a motion to modify by either party. Section 40-4-11.4(B)(1) contemplates "an annual exchange of financial information . . . for the year preceding the request [to modify.]" Regardless of practical, but non-judicially recognized or mandated alterations to the 2010 decree, it is the terms of the 2010 decree that are at issue on remand.

**{57}**  We recognize that the district court is empowered to deviate from the child support guidelines as provided in Section 40-4-11.2. Because the parties' combined gross monthly income, by any measure, exceeds $30,000, the district court could make gross income and percentage of combined income calculations exactly as described above and then elect to reduce the basic child support amount as a matter of discretion. However, when faced with a statutory presumption of material and substantial changes in circumstances, the district court does not have discretion to deny a motion to modify if doing so would perpetuate an objectively incorrect determination of the parties' percentage of combined income.

**{58}**  On remand, if the district court's recalculation of the parties' gross monthly incomes results in a deviation upward or downward of more than twenty percent such that Petitioner is entitled to a statutory presumption of material and substantial changes, the district court shall consider the recalculated percentage of combined income attributable to Petitioner independent of other considerations. If continued enforcement of the 2010 decree would result in inequity between the parties, the 2010 decree must be modified.

## ATTORNEY FEES

**{59}**  This Court reviews awards of attorney fees for abuse of discretion. *Bustos v. Bustos*, 2000-NMCA-040, ¶ 24, 128 N.M. 842, 999 P.2d 1074. Rule 1-127 NMRA governs the award of attorney fees in domestic relations cases and requires consideration of the "disparity of the parties' resources, prior settlement offers, the total amount of fees and costs expended by each party, and the success on the merits." *Weddington v. Weddington*, 2004-NMCA-034, ¶ 27, 135 N.M. 198, 86 P.3d 623. No single factor is dispositive. *See id.* ¶ 28 (holding that "disparity is only one factor to be considered and disparity cannot support reversal where the other factors weigh in favor of the award of attorney fees").

**{60}**  The district court concluded that Respondent was the prevailing party on the merits and awarded attorney fees consistent with that conclusion in the amount of $15,000. The

district court additionally concluded that several of the issues raised in Petitioner's motion to modify lacked merit and awarded Respondent $750 in attorney fees for the cost of defending. The district court's finding that Respondent prevailed on the merits, when viewed in conjunction with record evidence of settlement offers made by Respondent, could support an award of attorney fees. However, our reversal on the merits undermines the primary rationale underlying the district court's conclusion. The district court concluded that Respondent was the prevailing party because "[Petitioner] did not get an increase in child support." This issue is open on remand. *See Rabie v. Ogaki*, 1993-NMCA-096, ¶ 18, 116 N.M. 143, 860 P.2d 785 (holding that "ordinarily the district court should reconsider an award of attorney's fees and expenses when the judgment is reversed and the matter remanded to that court"). Therefore, we reverse the district court's award of attorney fees in the amounts of $15,000 and $750. The district court may reconsider the appropriateness of awards of attorney fees to both parties, including appellate attorney fees, on remand.

**{61}**   The same analysis does not apply to the district court's February 2, 2015 award of attorney fees arising from Respondent's post-judgment enforcement actions. On September 30, 2014, the district court entered its judgment. Respondent thereafter began efforts to enforce the awards of attorney fees in his favor. Rule 1-069(A) provides that, "[u]pon request of the judgment creditor or a successor in interest, the clerk shall issue a subpoena directing any person with knowledge that will aid in enforcement of or execution on the judgment, including the judgment debtor, to appear before the district court to respond to questions concerning that knowledge." Respondent filed notice to depose Petitioner in accordance with Rule 1-069 on November 4, 2014. Petitioner did not appear for this scheduled deposition and filed various motions seeking protection from deposition and other enforcement efforts. Respondent filed responses to the motions as well as a motion to compel Petitioner's deposition. He also appeared in court to litigate these motions. Following a hearing on the merits, the district court denied Petitioner's motions and awarded Respondent attorney fees in the amount of $1,500.

**{62}**   Petitioner argues on appeal that the district court was divested of authority to increase its award of attorney fees because the matter was pending on appeal. Petitioner's argument presents a question of subject matter jurisdiction, which we review de novo. *Weddington*, 2004-NMCA-034, ¶ 13. Petitioner does not argue that this award constituted an abuse of discretion by the district court. *See State v. Garnenez*, 2015-NMCA-022, ¶ 15, 344 P.3d 1054 ("We will not address arguments on appeal that were not raised in the brief in chief and have not been properly developed for review.").

**{63}**   Generally speaking, the filing of notice of appeal by either party "divests the district court of jurisdiction and transfers jurisdiction to the appellate court." *Murken v. Solv-Ex Corp.*, 2006-NMCA-064, ¶ 9, 139 N.M. 625, 136 P.3d 1035. This rule is not absolute. *Id.* The district court retains jurisdiction "to carry out or enforce the judgment." *Id.* (internal quotation marks and citation omitted). Rule 1-069 is solely related to enforcement of a judgment and is collateral to the matters on appeal. *See State ex rel. Howell v. Montoya*, 1965-NMSC-005, ¶ 11, 74 N.M. 743, 398 P.2d 263 (interpreting Rule 69 of the Federal

22

Rules of Civil Procedure and holding that "a new or independent action is not contemplated, but . . . the supplementary proceedings authorized by [Rule 69] is only a continuation of the original case for the purpose of discovery in aid of the *enforcement of the judgment*" (emphasis added)); *see also Kelly Inn No. 102 v. Kapnison*, 1992-NMSC-005, ¶ 39, 113 N.M. 231, 824 P.2d 1033 ("[I]n collateral matters not involved in the appeal, . . . the trial court retains jurisdiction.").

**{64}** Because the district court had subject matter jurisdiction over the parties under Rule 1-069, we affirm the February 2, 2015 attorney fee award of $1,500 to Respondent.

**CONCLUSION**

**{65}** For the foregoing reasons, we reverse and remand to the district court. On remand, the district court must use a figure for gross income consistent with the evidence offered at trial, and the court must then enter each parties' gross income into the child support guidelines to determine whether there has been a deviation of more than twenty percent. If not, the court still has to apply the factors in *Spingola* to determine whether there has been a material and substantial change justifying modification. If there is a deviation of more than twenty percent, the presumption does apply, and the court should first consider whether the non-movant has rebutted that presumption. Even if the presumption is rebutted, the district court must independently consider whether the recalculated percentage of combined income attributed to each party is inequitable such that modification is required. The district court must enter findings and conclusions that transparently supply the court's underlying basis for its determination whether to grant or deny the motion to modify, so that the parties are clear as to the manner in which the court evaluated the motion to modify.

**{66}    IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**STEPHEN G. FRENCH, Judge**