**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2010-NMCA-053

Filing Date: May 6, 2010

Docket No. 29,204

TOBORE KOKORICHA and OYINKAN KOKORICHA,
husband and wife,

      Plaintiffs-in-Intervention/Appellants,

v.

THE ESTATE OF DONALD I. KEINER, Deceased,
and PAT E. WHITE, as Personal Representative of
the Estate of Donald I. Keiner, PAT E. WHITE and
WESSIE WHITE, husband and wife,

      Defendants-in-Intervention/Appellees.

APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY
Stephen K. Quinn, District Judge

Moses, Dunn, Farmer & Tuthill, P.C.
Mark A. Glenn
Albuquerque, NM

for Appellants

Pool Law Firm, P.C.
Wesley O. Pool
Clovis, NM

for Appellees

## OPINION

**VANZI, Judge.**

**{1}**     At issue in this appeal is the ownership of a single-family residence in Clovis, New Mexico (the Property). Tobore Kokoricha and Oyinkan Kokoricha (the Kokorichas) appeal the district court's order dismissing with prejudice their request for a declaratory judgment

1

stating that they are good-faith purchasers for value of the Property. The Kokorichas contend that the district court erred when it concluded that the Kokorichas' purchase of the Property was subject to a notice of lis pendens and that the Kokorichas' title to the Property was subject to the same deficiencies as the title of their immediate predecessors in interest. We reverse the district court's ruling and remand for further factual determinations as set forth below.

**BACKGROUND**

{2}    The following facts are undisputed. The Kokorichas purchased the Property on March 27, 2007, for $88,000. Upon purchase, the Kokorichas received a warranty deed to the Property, which was duly recorded with the county clerk. At the time of the Kokorichas' purchase, the Property was the subject of a lengthy and ongoing probate litigation. The Kokorichas claim that they were unaware of the pending litigation when they purchased the Property.

{3}    The probate litigation was initiated in 2001 by Pat E. White, as personal representative of the Estate of Donald I. Keiner (the Estate). Mr. Keiner had owned the Property until shortly before his death, when he deeded the Property to his nephew, Lari Bollinger (Nephew). After Mr. Keiner's death, the Estate alleged that Nephew had asserted undue influence over Mr. Keiner in obtaining the deed. The Estate initiated an action within the probate proceeding to set aside the deed from Mr. Keiner to Nephew and to have the Property and other assets in Nephew's possession returned to the Estate. The Estate did not record a notice of lis pendens on the Property at the initiation of these proceedings.

{4}    During the first two years of the litigation, the Property changed hands three times. The first two exchanges were between family members and for nominal purchase prices. The third exchange took place on August 6, 2003, when the Kokorichas' grantors (Grantors) purchased the Property for $42,500. It is undisputed that at the time of Grantors' purchase of the Property, no notice of lis pendens had been recorded, and Grantors were not a party to the ongoing probate litigation.

{5}    On September 23, 2003, upon motion by the Estate, the district court issued an order joining Grantors to the probate litigation. Three days later, on September 26, 2003, the Estate recorded a notice of lis pendens on the Property. Subsequently, on November 4, 2003, the Estate recorded an amendment to lis pendens. The record does not include a copy of the notice of lis pendens or the amendment, and it is unclear from the record why the amendment was necessary.

{6}    On November 12, 2003, Grantors moved to be dismissed as parties to the probate litigation based on insufficiency of process and failure to state a claim upon which relief could be granted. In a separate motion, Grantors moved to have the lis pendens and amended lis pendens canceled. On February 20, 2006, the district court dismissed "any and all claims and causes of action" against Grantors without prejudice. The court did not issue

an order regarding Grantors' motion to cancel the lis pendens; however, on February 23, 2006, the Estate, on its own initiative, recorded a release of lis pendens releasing both the original and the amended notices. The Estate made no further effort to join Grantors as parties to the litigation.

{7}     On March 27, 2007, a little more than a year after the Estate's release of lis pendens, the Kokorichas purchased the Property from Grantors. The Kokorichas had not at any time been parties to the probate litigation, and they claim they were unaware of the probate litigation at the time they purchased the property.

{8}     On October 31, 2007, the district court issued a final order in the probate litigation declaring that the deed from Mr. Keiner to Nephew had been fraudulently obtained and was therefore void and invalid and that all subsequent deeds were also invalid. The order returned possession of the Property to the Estate. Thereafter, the personal representative of the Estate conveyed the Property to Pat E. White and Wessie White (the Whites), as joint tenants, by executor's deed dated November 30, 2007. The Whites then took steps to take possession and control of the Property. Upon learning of the Whites' actions, the Kokorichas filed emergency motions to reopen and to intervene in the probate proceeding and filed a request for declaratory judgment stating that they were "good-faith purchasers of the Property for value and declaring the parties' ownership rights and status with regard to the Property." The court granted the motions to reopen and to intervene but ultimately dismissed with prejudice the Kokorichas' request for declaratory judgment. The court found that the release of lis pendens recorded by the Estate was ineffective and that the Kokorichas could obtain no better title to the Property than their predecessors in title possessed.

{9}     On appeal, the Kokorichas argue that the district court erred when it concluded as a matter of law that (1) despite being released by the Estate, the notice of lis pendens was in effect at the time the Kokorichas purchased the Property, and (2) the Kokorichas were subject to the same failures of title to which Grantors were subject. The Kokorichas also argue that, because they were not parties to the probate litigation, they were not bound by the district court's order in that proceeding, that the district court lacked personal jurisdiction to enter a binding order against them, and that lack of notice violated their rights to due process. We find sufficient reason to overturn the district court's ruling based on the Kokorichas' first two arguments, and we remand for further factual findings on whether the Kokorichas had actual notice of the probate litigation.

## DISCUSSION

### Standard of Review

{10}     The parties disagree as to the appropriate standard of review to be applied in the current case. The Kokorichas argue that the facts of the case are not in dispute, and the only issues raised on appeal are questions of law, and therefore, a de novo review is appropriate. On the other hand, the Estate asserts that substantial evidence is the appropriate standard to

3

apply. Citing *Ponder v. State Farm Mutual Automobile Insurance Co.*, 2000-NMSC-033, ¶ 6, 129 N.M. 698, 12 P.3d 960, the Estate argues that a de novo review is inappropriate because "this appeal presents no questions of public policy with any broad precedential value." We note, however, that our Supreme Court in *Ponder* does not limit the use of de novo review to cases having broad precedential value and presenting questions of public policy; it merely states that in such cases a de novo review is appropriate. *Id.*

**{11}**   The resolution of this appeal depends solely on two legal questions. First, was the notice of lis pendens in effect at the time the Kokorichas purchased the Property? And second, were the Kokorichas subject to the possible deficiencies in Grantors' title? We review questions of law de novo. "[I]f no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. "We review de novo the trial court's application of the law to the facts in arriving at its legal conclusions." *Ponder*, 2000-NMSC-033, ¶ 7.

**Effect of the Release of Lis Pendens**

**{12}**   The Kokorichas argue that the district court erred when it concluded as a matter of law that, despite being previously released by the Estate, the notice of lis pendens was in effect at the time the Kokorichas purchased the Property. We agree that the district court erred.

**{13}**   "A lis pendens is a vehicle for permitting an individual, involved in an action which affects title, to put subsequent purchasers on notice of pending claims involving the property." *Salas v. Bolagh*, 106 N.M. 613, 615, 747 P.2d 259, 261 (Ct. App. 1987). A lis pendens provides constructive notice of the suit in the absence of a party's actual knowledge of the litigation. *Title Guar. & Ins. Co. v. Campbell*, 106 N.M. 272, 277, 742 P.2d 8, 13 (Ct. App. 1987).

**{14}**   In New Mexico, the lis pendens doctrine is codified in NMSA 1978, Sections 38-1-14 to -15 (1953, as amended through 1965). Section 38-1-14 states that in all actions affecting the title to real estate, the plaintiff may record a notice of the pendency of the suit, and that notice "shall be constructive notice to a purchaser or encumbrancer of the property concerned; and any person whose conveyance is subsequently recorded . . . shall be bound by all the proceedings taken after the recording of the notice to the same extent as if he were made a party to the said action." If a judgment is ultimately rendered in favor of the party filing the notice of lis pendens, "the rights of that party relate back to the date of the notice." *Title Guar. & Ins. Co.*, 106 N.M. at 277, 742 P.2d at 13. "The result of filing a formal notice of lis pendens is that anyone dealing with the property in a subsequent transaction is prevented from being a bona fide purchaser without notice." 14 Richard R. Powell, *Powell on Real Property* § 82A.03[2] at 82A-20 (Michael Allan Wolf ed., Matthew Bender 2008) (1949).

4

**{15}** In the present case, the Estate did not exercise its right to record a notice of lis pendens when it initiated the legal action involving the Property; however, the Estate did record a notice of lis pendens after Grantors were joined in the lawsuit, approximately two years into the probate litigation. When the district court dismissed Grantors without prejudice from the probate litigation for insufficiency of process, the Estate chose to record a release of lis pendens on the Property instead of properly serving and attempting to rejoin Grantors to the suit. The threshold question in this appeal is the effect of the Estate's release of lis pendens.

**{16}** In reaching its decision that the lis pendens remained in effect until the end of the lawsuit, notwithstanding the voluntary release by the Estate, the district court relied on *Salas*. In that case, this Court stated that "regardless of the validity of the cancellation, the lis pendens established by the suit continues until expiration of the time for appeal or until final disposition of the case by the appellate court." *Salas*, 106 N.M. at 615, 747 P.2d at 261. The district court interpreted our holding in *Salas* to apply to any release of lis pendens whether it be ordered by the court or voluntarily released by the party who originally filed the notice. We disagree with the district court's interpretation.

**{17}** The question before this Court in *Salas* was whether a district court's release of notice of lis pendens prior to the completion of the appeals process was valid. In *Salas*, the district court had entered judgment for the defendant and released a notice of lis pendens that had been recorded by the plaintiff. *Id.* at 614, 747 P.2d at 260. On appeal, this Court ruled in favor of the plaintiff; however, by the time the appeals process had completed, the defendant had sold the property to third-party purchasers. *Id.* The third-party purchasers claimed that, because of the district court's release of the notice of lis pendens, they had no notice of the legal action involving the property and, therefore, they were bona fide purchasers in good faith. *Id.* at 614-15, 747 P.2d at 260-61. The district court agreed with the third-party purchasers, and the plaintiff once again appealed. *Id.*

**{18}** In response to the plaintiff's second appeal, we held that a court may not order a release of notice of lis pendens "until expiration of the time for appeal or until final disposition of the case by the appellate court." *Id.* at 615, 747 P.2d at 261. Our holding in *Salas* addresses a court-ordered release of lis pendens. In the present case, the district court did not order the release of lis pendens; rather, the Estate voluntarily recorded the release. The question of a voluntary release of notice by the party that originally filed that notice was not before this Court in *Salas*. We adhere to the rule that "cases are not authority for propositions not considered." *Fernandez v. Farmers Ins. Co. of Ariz.*, 115 N.M. 622, 627, 857 P.2d 22, 27 (1993) (internal quotation marks and citation omitted). Therefore, our holding in *Salas* is not applicable to the circumstances of the present case.

**{19}** In order to determine the effect of a party's voluntary release of lis pendens, we look to the history of the lis pendens doctrine and the purpose of New Mexico's lis pendens statutes. Prior to the Legislature's adoption of the lis pendens statutes in the late eighteen hundreds, the general common-law doctrine of lis pendens applied. The essence of that

5

doctrine was that the doctrine of lis pendens attached upon the filing of any action involving the title to real property, and subsequent purchasers, either with or without notice, took subject to the result of that litigation. *Hammersley v. District Court*, 610 P.2d 94, 95 (Colo. 1980) (en banc).

**{20}** The common-law rule was harsh because "[i]t bound anyone who acquired an interest in property by the result of pending litigation involving that property even though the interest was acquired without knowledge of the litigation." *Id.* at 96. The harshness of the common-law rule led most states to adopt statutes that required the recording of a notice of lis pendens in addition to the initiation of litigation in order to trigger the lis pendens doctrine. Powell, *supra*, § 82A.01[3] at 82A-7. Under these statutes, "[p]arties who do not take the minimal steps required . . . to properly provide notice of pending litigation lose the protections they would otherwise have against subsequent good faith purchasers of the property." *Id.* § 82A.01[2] at 82A-5.

**{21}** In New Mexico, the lis pendens statutes, Sections 38-1-14 to -15, replaced the common-law doctrine. These statutes provide the specific mechanism of a recorded notice of suit, which a plaintiff in an action affecting title to real property must use if he wishes to ensure that subsequent purchasers of that property have constructive notice of the pending claims. Section 38-1-14. The effect of the statute is that where a party chooses not to exercise his right to give notice to subsequent purchasers through a notice of lis pendens, either by not recording a notice during the litigation or by releasing the notice prior to the conclusion of the litigation, future purchasers are deemed to be without constructive notice of the pending claims involving the property.

**{22}** The Estate chose not to file a notice of lis pendens upon its initiation of the action or at any time during the first two years of the litigation. Similarly, after filing a notice of lis pendens, the Estate released that notice prior to the conclusion of the litigation. The result of the Estate's actions was that, at the time the Kokorichas purchased the Property, there was no active notice on record providing the Kokorichas with constructive notice of the pending probate litigation involving title to the Property.

**Effect of Grantors' Voidable Title**

**{23}** The Kokorichas next argue that the district court erred when it concluded as a matter of law that the Kokorichas were subject to the same failures of title to which Grantors were subject. Again, we agree that the district court erred.

**{24}** The district court found in the probate litigation that the deed from Mr. Keiner to Nephew was fraudulently obtained. Based on that determination, the district court declared Nephew's deed to be void and invalid. The district court further determined that all subsequent takers of the Property, up to and including Grantors, had actual notice of the litigation and, therefore, those deeds were also void and invalid. In the current case, the district court reasoned that because Grantors' title was void, the title the Kokorichas obtained

6

from Grantors was also void. We note, however, that the Kokorichas purchased the Property from Grantors several months *before* the district court issued its ruling declaring Grantors' deed to be void; therefore, at the time of the Kokorichas' purchase, Grantors' deed may have been voidable, but it had not yet been declared void.

**{25}** In *State ex rel. State Tax Commission v. Garcia*, 77 N.M. 703, 427 P.2d 230 (1967), our Supreme Court discussed when conveyances are void or merely voidable. In *Garcia*, the state sought to set aside certain deeds issued by the State Tax Commission because the state alleged that it had issued the deeds based on fraudulent, false, illegal, and untrue representations made by the defendant. *Id.* at 704, 427 P.2d at 231. Prior to the state bringing suit in the matter, the defendant had transferred title to third-party purchasers who had no actual or constructive knowledge of the defendant's fraudulent representations. *Id.* The state argued that, because of the fraud, the defendant had obtained no title from the state and, consequently, the defendant's grantees obtained nothing from the defendant. *Id.* at 704-05, 427 P.2d at 232. The Court held that deeds alleged to have been obtained by fraud are not void but are merely voidable until suit to cancel them is sustained "by proof which produces conviction." *Id.* at 708-09, 427 P.2d at 234 (internal quotation marks and citation omitted). Based on this holding, we conclude that, because the district court had not yet issued its ruling declaring Grantors' deed void, Grantors' deed to the Property was merely voidable at the time of the conveyance to the Kokorichas.

**{26}** The Court in *Garcia* went on to state that there can be no cancellation of a voidable deed where there has been a sale to a good-faith bona fide purchaser. *Id.* at 709, 427 P.2d at 235. Despite satisfactory proof of fraud, "'bona fide purchase for value is a perfect defense.'" *Id.* at 709, 427 P.2d at 234 (quoting *Wright-Blodgett Co. v. United States*, 236 U.S. 397, 403 (1915)). In light of the holding in *Garcia*, if the Kokorichas are found to be bona fide purchasers for value, then the Kokorichas received good title to the property, free from any defects that may have been inherent in Grantors' title. We, therefore, next address the question of whether the Kokorichas were bona fide purchasers for value at the time of their purchase of the Property.

**{27}** In order to have been bona fide purchasers, the Kokorichas must have given value for the property, and they must have been without either constructive or actual notice of the pending litigation. The Kokorichas gave value for the property by paying Grantors $88,000 and, as we determined above, the Kokorichas did not have constructive notice of the litigation; however, we are unable to determine whether the Kokorichas had actual notice of the litigation.

**{28}** The Kokorichas were not at any time parties to the probate litigation, and they allege in their emergency motion to intervene, their complaint in intervention for declaratory judgment, and their verified petition for temporary restraining order and injunctive relief, that they had no actual notice of the litigation. However, the Estate's answer to the complaint and the verified petition deny these allegations. Evidence was not presented on this issue at the hearing, and the district court, in its findings of fact and conclusions of law,

7

made no finding as to whether the Kokorichas had actual notice of the litigation. Additionally, the district court did not make a definitive finding as to the Kokorichas' status as bona fide purchasers, rather, the court merely noted that the Kokorichas claimed that status.

**{29}** Based on the record before us, we cannot determine whether the Kokorichas had actual notice of the litigation and, therefore, we cannot determine whether the Kokorichas were bona fide purchasers of the Property. Accordingly, we remand to the district court for a factual determination as to whether the Kokorichas had actual knowledge of the pending litigation at the time of their purchase of the Property.

**Other Arguments Made By the Estate in Its Answer Brief**

**{30}** The Estate makes several arguments based on its premise that granting title to the Kokorichas is, in effect, granting the Kokorichas an award of specific performance against the Estate. The Estate cites no controlling or on-point authority for its argument, and we are not persuaded that the equitable remedy of specific performance is at issue in this case.

**{31}** Specific performance is an equitable remedy under contract law. "Specific performance is the actual accomplishment of a contract by a party bound to fulfill it, and is a means of compelling a party to do precisely what he ought to have done without being coerced by a court." *McCoy v. Alsup*, 94 N.M. 255, 261, 609 P.2d 337, 343 (Ct. App. 1980) (internal quotation marks and citation omitted). The present case raises no claims under contract law; rather, both the Estate and the Kokorichas claim ownership of the Property and the remedy sought is a declaration by the court as to which party is the lawful owner.

**CONCLUSION**

**{32}** For the reasons set forth above, we reverse the district court's ruling and remand the case for further proceedings consistent with this opinion.

**{33}** **IT IS SO ORDERED.**

                                            _____

                                            **LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**MICHAEL E. VIGIL, Judge**

8