This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-37574**

**CRADON ENERGY, LP, a Texas
limited partnership,**

Plaintiff,

v.

**ENERGY ROYALTIES, LLC, a
Delaware limited liability company,**

Defendant,

**TAL PERMIAN, LLC,**

Petitioner/Redemption-Appellant,

v.

**CRADON ENERGY, LP,**

Respondent/Redemption-Appellee.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY
William G.W. Shoobridge, District Judge**

Marrs Griebel Law, Ltd.
Clinton W. Marrs
Albuquerque, NM

for Appellant

Hinkle Shanor LLP
Rebecca Nichols Johnson
Ann Cox Tripp
Roswell, NM

for Appellee

## MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** Tal Permian, LLC, appeals the district court's dismissal of its petition for redemption of real estate for lack of standing. On appeal, TAL Permian argues that the statutory right of redemption is not an interest in real property, but instead is a personal privilege not subject to Article 4 of the Uniform Probate Code (UPC). NMSA 1978, §§ 45-4-101 to -401 (1975, as amended through 1995). We affirm.

## BACKGROUND

**{2}** The following facts are not disputed. Prieur J. Leary, Jr. founded Energy Royalties, LLC in 2007 and was its sole member and owner. After Mr. Leary's death in 2013, Cradon Energy, LP, obtained a default judgment against Energy Royalties in 2014 in the state of Kansas. Cradon Energy domesticated its judgment in New Mexico and filed a transcript of judgment in Lea County in August 2015 and September 2015 respectively. On January 6, 2016, Cradon Energy filed a complaint for enforcement of judgment and foreclosure against Energy Royalties seeking to foreclose its judgement lien on numerous oil and gas leases on property located in Lea County. On December 5, 2016, the district court entered a default judgment for foreclosure and order of sale. The district court's order imposed a nine-month redemption period after judicial sale in accordance with New Mexico law.

**{3}** On May 15, 2017, a foreclosure sale took place at which Cradon Energy placed the winning bid of $5,000, plus costs. Following the sale, the property was conveyed to Cradon Energy by a special master's deed subject to the nine-month redemption period. On May 24, 2017, the district court entered an order approving the sale and special master's report confirming Cradon Energy's winning bid on the property. The nine-month redemption period was thus set to expire February 24, 2018. *See* NMSA 1978, § 39-5-18(A), (E) (2007) (providing that the running of the redemption period starts on the date the district court enters the order confirming the special master's sale).

**{4}** On February 23, 2018, the district court for the Parish of Orleans in the State of Louisiana appointed Ashley Leary administratrix of her father's, Mr. Leary, estate (the Estate). Also on February 23, 2018, Leary petitioned the Louisiana court for authority to sell the Estate's interests in real property located in New Mexico—including rights of redemption for the property which had since been acquired by Cradon Energy at the foreclosure sale—to TAL Realty, Inc. That same day, the Louisiana court granted Leary's petition and she executed two separate assignments of rights for the benefit of TAL Permian[1]. The assignments were identical except that Energy Royalties was one

---

[1]TAL Realty is a single purpose entity operated by the same principal as TAL Permian that served as an intermediary to the purchase in order to mitigate risk.

assignor and the other assignment was by the Estate. Later that same day, TAL Permian filed a petition for redemption of real estate in the New Mexico foreclosure case and attached copies of the assignments as exhibits.

{5}     On April 5, 2018, Cradon Energy filed a motion to dismiss Tal Permian's petition for lack of standing arguing in part that TAL Permian had shown no "basis for its right other than indirectly, through a non-domesticated probate order, [purporting] to exercise jurisdiction over real property in the State of New Mexico." Citing *Allen v. Amoco Production Co.*, 1992-NMCA-054, 114 N.M. 18, 833 P.2d 1199, Cradon Energy argued that New Mexico requires filing of ancillary probate proceedings to validate conveyances of any interest in real property located in New Mexico by a foreign personal representative.

{6}     The district court held a hearing on Cradon Energy's motion to dismiss on July 11, 2018. During the hearing, Cradon Energy focused the majority of its arguments on the lack of ancillary probate proceedings in New Mexico, contending that "there was no timely order entered by a court in New Mexico under New Mexico's Ancillary Probate Code giving [Leary] . . . authority to sell . . . real property interests in New Mexico."[2] TAL Permian responded that ancillary probate proceedings were not required to give effect to the assigned redemption rights because such rights are not an interest in real property.

{7}     The district court took the issues under advisement and later issued an order granting Cradon Energy's motion to dismiss. In its order, the district court found in relevant part:

> 8.     The real properties in question were held solely by Prieur James Leary, Jr. at the time of his death[;]
>
> 9.     Leary, Administratrix in Louisiana, was never appointed Personal Representative in a New Mexico Ancillary Probate proceeding nor was a Proof of Authority filed in New Mexico prior to the period of redemption expiring, and no probate proceedings of any kind have been initiated in New Mexico[;]
>
> 10.     Leary, Administratrix in Louisiana, had a duty to initiate ancillary probate proceeding in New Mexico giving her authority to assign the

___

2Cradon Energy also briefly argued that the discrepancy between the Louisiana order approving sale to TAL Realty and the assignments to TAL Permian presented a "critical standing problem." In response TAL Permian asserted that the interests were initially assigned to TAL Realty which then assigned them to TAL Permian. TAL Permian provided documentation to the court to support its contention but the document(s) were not admitted as evidence and were not included as part of the record in this case. While the district court did not rule on this issue, Cradon Energy raises this argument again in its answer brief. Because this Court's holding does not rely on determination of this issue we will not address it further. *See Stennis v. City of Santa Fe*, 2006-NMCA-125, ¶ 28, 140 N.M. 517, 143 P.3d 756 ("[A]n appellate court need not decide an issue that will have no practical effect on the current litigation."), *rev'd on other grounds by* 2008-NMSC-008, 143 N.M. 320, 176 P.3d 309.

redemption rights of the real estate prior to the end of the redemption period as the assignment affected land titles in New Mexico. *See generally Allen . . .* , 1992-NMCA-54[;]

11.     The assignment upon which TAL Permian . . . claims to stand in the shoes of the decedent Prieur James Leary, Jr. or Energy Royalties . . ., as a former Defendant owner of the real estate was void as the requirements of [Section] 45-4-201 to [-]207 . . . were not complied with during the redemption period.

## DISCUSSION

{8}     On appeal, TAL Permian argues that the statutory right of redemption in real property is a personal privilege not subject to the requirements of Sections 45-4-201 to -207 of the UPC. In response, Cradon Energy argues that the assignments at issue are void because compliance with ancillary probate proceedings are a prerequisite to any conveyance affecting real property in New Mexico, including rights of redemption. For the reasons explained below, this Court holds that regardless of the nature of the statutory right of redemption—as property of the Estate located in New Mexico—the UPC is applicable and compliance with its requirements is necessary to affect transfer of the rights.

### Standard of Review

{9}     TAL Permian's arguments on appeal challenge the district court's application of law to the facts of this case. "On appeal we will not disturb the trial court's factual findings unless the findings are not supported by substantial evidence." *Strata Prod. Co. v. Mercury Expl. Co.*, 1996-NMSC-016, ¶ 12, 121 N.M. 622, 916 P.2d 822. "We review de novo the trial court's application of the law to the facts in arriving at its legal conclusions." *Kokoricha v. Estate of Keiner*, 2010-NMCA-053, ¶ 11, 148 N.M. 322, 236 P.3d 41 (internal quotation marks and citation omitted). To the extent determination of the issues presented requires that we engage in statutory interpretation, "our charge is to determine and give effect to the Legislature's intent." *Little v. Jacobs*, 2014-NMCA-105, ¶ 7, 336 P.3d 398 (internal quotation marks and citation omitted). When construing a statute the general rule is that the "plain language of a statute is the primary indicator of legislative intent." *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (internal quotation marks and citation omitted). "Courts are to give the words used in the statute their ordinary meaning unless the [L]egislature indicates a different intent." *Id.* (internal quotation marks and citation omitted). We "will not read into a statute or ordinance language which is not there, particularly if it makes sense as written." *Id.* (internal quotation marks and citation omitted).

## A.     Assignment of a Redemption Right in New Mexico by a Foreign Personal Representative Is Subject to Requirements of the UPC

**{10}** TAL Permian's arguments on appeal require this Court to determine whether the statutory right of redemption, created by Section 39-5-18, is property or an interest in property, such that assignment of the right by a foreign personal representative requires ancillary probate proceedings in New Mexico. In this regard we construe TAL Permian's arguments to suggest that ancillary probate proceedings, or similar requirements under the UPC, are required only if the right of redemption is considered as either personal or real property. In making this argument, TAL Permian attempts to establish the right of redemption as a "personal privilege" distinct from either form of property. In the context of this case, this is a distinction without a difference. Our review of the applicable sections of the UPC reveals that even if we consider the right of redemption to be a "personal privilege," the UPC requires that a foreign personal representative provide proof of authority before exercising power over that privilege in New Mexico. *See generally* §§ 45-4-201 to -207 (identifying the "Powers of Foreign Personal Representatives"). We explain.

**{11}** The district court based its findings on application of Article 4 of the UPC, which concerns foreign personal representatives and ancillary administrations of foreign estates with assets in New Mexico. *See generally* §§ 45-4-101 to -401. Specifically, Sections 45-4-204 and 45-4-207 describe the two methods by which a foreign personal representative may establish authority in New Mexico. The district court found that because no ancillary probate proceedings (under Section 45-4-207) nor proof of Leary's authority as administratrix in Louisiana (under Section 45-4-204) were filed in New Mexico, the assignments of statutory redemption rights to TAL Permian were void. TAL Permian does not dispute that Leary failed to file ancillary proceedings or proof of her authority, as administratrix, prior to termination of the redemption period. Instead, TAL Permian contends that such filings were unnecessary because the assignment of redemption rights is a "personal privilege" and not property subject to the UPC. We therefore review the UPC and the statutory right of redemption for guidance in determining whether Leary was required to file ancillary probate proceedings or proof of authority in order to give effect to her assignment of redemption rights.

**{12}** The UPC governs the administration and distribution of property in New Mexico held by a foreign estate. *See* NMSA 1978, § 45-1-301(A)(2) (2011) (stating that the UPC applies to "the property of nonresidents located in New Mexico or property coming into the control of a fiduciary who is subject to the laws of New Mexico"); *see also* NMSA 1978, § 45-1-102(B)(4) (2011) (stating that the UPC "facilitate[s] survivorship and related accounts and similar property interests in New Mexico"). The UPC broadly defines the term "property" to include "both real and personal property or *any right or interest therein* and means *anything that may be the subject of ownership*[.]" [3] NMSA 1978, § 45-1-201(A)(40) (2011) (emphasis added). We now turn to TAL Permian's assertion that the right of redemption in real property is a "personal privilege" and thus not an interest in real property subject to the UPC.

---

3The Uniform Probate Code Practice Manual explains that the UPC's definition of "*property*" "coordinates with many other sections [of the UPC] to eliminate the traditional distinctions for inheritance purposes between real and personal property." 1 *Uniform Probate Code Practice Manual* 20 (Richard V. Wellman ed., 2d ed. 1977).

**{13}** In support of its position that the statutory right of redemption is a "personal privilege" distinct in character from either real or personal property or an interest therein, TAL Permian cites a number of cases from other jurisdictions and offers excerpts from each that appear to confirm a general recognition of a statutory redemption right as a personal privilege. The excerpts provide little context for the proposition and even less analysis. Moreover, TAL Permian does not attempt to supplement this lack of context or analysis with its own, but rather relies on the cases to establish that its proposed interpretation is widely held and long standing. TAL Permian then argues that because the right of redemption is a personal privilege rather than property located in New Mexico, the UPC does not govern its assignment and that assignment of the redemption right does not affect title of land located in New Mexico until the right is exercised through a district court. For the reasons we explain below, we disagree and conclude that even if we construe the right of redemption as a personal privilege, it is nevertheless property located in the New Mexico, and therefore, compliance with the UPC is required before the right may be assigned.

**B.    The Statutory Right of Redemption Is Property as Defined by the UPC**

**{14}** In New Mexico, the right of redemption arises from statute. *See* § 39-5-18. The redemption statute provides, in pertinent part, that "real estate may be redeemed by the former defendant owner . . . whose rights were judicially determined in [a] foreclosure proceeding." Section 39-5-18(A). The redemption statute defines "owner" as used in Section 39-5-18 to include an owner's "personal representatives, heirs, successors and assigns." Section 39-5-18(D). Therefore, the right of redemption is an assignable right. *See W. Bank of Las Cruces v. Malooly*, 1995-NMCA-044, ¶ 9, 119 N.M. 743, 895 P.2d 265 (holding that the redemption statute authorizes a holder-by assignment to redeem property from the judicial sale of foreclosed property).

**{15}** Because the UPC broadly defines "property" as "anything that may be the subject of ownership[,]" it is evident that the right of redemption—as an assignable right—is at minimum subject to ownership and thus falls within the definition of property. Section 45-1-201(A)(40); *see Quality Chiropractic, PC v. Farmers Ins. Co. of Ariz.*, 2002-NMCA-080, ¶ 6, 132 N.M. 518, 51 P.3d 1172 (stating that " '[a]n assignment' is a transfer of property or some other right from one person (the 'assignor') to another (the 'assignee')[.]' " (quoting 6 Am. Jur. 2d *Assignments* § 1 (1999)). The fact that the Estate sold the right of redemption to TAL Permian demonstrates that the right is subject to ownership. Thus, even if identified as a "personal privilege" as TAL Permian suggests, we conclude that the statutory right of redemption is property within the context of the UPC. We next determine whether compliance with sections of the UPC authorizing foreign personal representatives to administer property in New Mexico is required before such a representative can assign a right of redemption.

**{16}** As stated above, the UPC governs the administration and distribution of property in New Mexico held by a foreign estate. Our Legislature enacted the ancillary probate system "to provide a way to assure that a will is valid and that [a foreign personal representative] proceeds according to law." *Allen*, 1992-NMCA-054, ¶ 8. In this regard,

the UPC requires that a personal representative of a foreign estate establish his or her authority in New Mexico before exercising power over estate property located within this state. As discussed in more detail below, a personal representative of a foreign estate may do so either through Section 45-4-204 or Section 45-4-207 of the UPC. These sections respectively set out informal and formal means of establishing authority. Additionally, the extent of that authority and the powers granted to foreign personal representatives pursuant to these sections are defined in various other sections of the UPC. We evaluate both Section 45-4-204 and Section 45-4-207 in turn. We also evaluate other relevant sections of the UPC as necessary.

**C.    Compliance With Article 4 of the UPC Is Required to Establish a Foreign Personal Representative's Authority Over Estate Property in New Mexico**

**{17}**    Section 45-4-204 sets out an informal means of establishing the authority of a foreign personal representative over estate property in New Mexico and requires in part that a foreign representative "file with the court of a county in which property belonging to the decedent is located authenticated copies of his appointment[.]" *Id.* Upon compliance with Section 45-4-204, a foreign personal representative "may exercise as to assets in New Mexico all powers of a local personal representative[.]" Section 45-4-205. NMSA 1978, Section 45-3-711 (2017) identifies the duties and powers of a local personal representative including power over the title to property of the estate. In pertinent part, Section 45-3-711(A) states that "a personal representative has the same power over the *title to property* of the estate that an absolute owner would have[.]" (Emphasis added.) Notably, in drafting Section 45-3-711, our Legislature did not distinguish between personal and real property but instead simply used the term *property*. *See Diamond v. Diamond*, 2012-NMSC-022, ¶ 29, 283 P.3d 260 ("We must assume the [L]egislature chose its words advisedly to express its meaning unless the contrary intent clearly appears." (internal quotation marks and citation omitted)). Accordingly, we construe the authority of a foreign personal representative, established under Section 45-4-204, to include power over *property* as broadly defined in the UPC, including the right of redemption. *See High Ridge Hinkle Joint Venture*, 1998-NMSC-050, ¶ 5 (observing that "[c]ourts are to give the words used in the statute their ordinary meaning unless the [L]egislature indicates a different intent"). We next turn to evaluate the requirements of Section 45-4-207.

**{18}**    Section 45-4-207(A) sets out formal ancillary probate proceedings and provides in pertinent part: "Upon the filing of an authenticated copy of the will, if any, and an authenticated copy of the domiciliary letters with the court, a foreign personal representative may be granted ancillary letters of administration in formal proceedings." *Id.* Foreign personal representatives establishing authority under Section 45-4-207 also exercise the powers of domestic personal representatives as discussed above. *See* § 45-4-207(B)(2) ("In respect to a nonresident decedent, the provisions of [NMSA 1978,] Sections [45-]3-101 through -1204 [(1975, as amended through 2017)] govern . . . the status, powers and duties and liabilities of any local personal representative and the rights of claimants, purchasers, distributees and others in regard to a local administration."). Therefore, we conclude that a foreign personal representative after

compliance with Section 45-4-207 may exercise power over estate property as the term is broadly defined in the UPC, including the right of redemption.

**{19}** Lastly, because foreign personal representatives who have complied with either Sections 45-4-204 or 45-4-207 exercise the same power as local personal representatives, we turn to Section 45-3-701(A) in order to determine when those powers commence. Section 45-3-701(A) states that "[t]he duties and powers of a personal representative commence upon [his or her] appointment." Accordingly, when read together, the language of Sections 45-4-204, -207, 45-3-711, and 45-3-701(A) establish that foreign personal representatives may only exercise authority over *property* of the estate located in New Mexico upon compliance with either Section 45-4-204 or Section 45-4-207. *See State v. Zuni Pub. Sch. Dist., #89*, 2018-NMSC-029, ¶ 31, 458 P.3d 362 ("We must construe each part of the statute in connection with every other part so as to produce a harmonious whole." (alterations, internal quotation marks, and citation omitted)).

**{20}** Because we conclude that the statutory right of redemption is *property* within the meaning of the UPC, we conclude that in order to assign the right of redemption, a foreign personal representative must obtain authority to do so through compliance with either Section 45-4-204 or Section 45-4-207. In this case, it is undisputed that Leary did not comply Section 45-4-204 or Section 45-4-207 before assigning redemption rights to TAL Permian, thus, the assignments were void.

**CONCLUSION**

**{21}** For the foregoing reasons, we affirm the district court's dismissal of TAL Permian's petition for redemption of real property.

**{22}   IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**