This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-36881

**JO ANN EASTWOOD and CATHERINE OLDFIELD, Co-Personal Representatives of the Estate of Charley B. Oldfield, Deceased,**

      Plaintiffs-Appellants,

v.

**BILLIE CARLENE OSKINS, JESSIE FIELDS, and RON BROWN,**

      Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SIERRA COUNTY**
**Douglas R. Driggers, District Judge**

Threet Law Firm
Joseph L. Romero
Albuquerque, NM

for Appellants

Deschamps Law Firm, LLC
Lee Deschamps
Socorro, NM

for Appellees

### MEMORANDUM OPINION

**IVES, Judge.**

**{1}** Plaintiffs Jo Ann Eastwood and Catherine Oldfield, as co-personal representatives of the Estate of Charlie Oldfield, appeal from a judgment following a bench trial in which the district court ruled that Plaintiffs were not entitled to cancel a

conveyance of real property by the former personal representative of the Estate, Defendant Billie Carlene Oskins, to Defendant Ron Brown. The district court concluded that Brown was protected as a bona fide purchaser for value. We affirm, though for a different reason than that relied on by the district court.

**BACKGROUND**

**{2}**     Decedent, Charley Oldfield, owned real property consisting of several acres and a residence in Sierra County (the Property) that served as collateral for a personal loan with BBVA Compass Bank (Compass Bank). Mr. Oldfield died testate in July 2011, devising all of his real and personal property to his six children, including Defendant Oskins, in equal shares. The will designated Oskins as personal representative for the Estate, and the probate court in Sierra County entered an order of appointment effectuating that designation in November 2011.

**{3}**     Following Mr. Oldfield's death, the siblings agreed that the Property would not be sold, that their brother, Buster Oldfield, would continue to live on the Property, and that each sibling would contribute money on a monthly basis to pay utilities and the amount due on the loan. The Estate nevertheless fell behind in loan payments. On February 12, 2012, Oskins, as personal representative, recorded a quitclaim deed conveying the Property to herself with the Sierra County clerk's office. Oskins took this action in order to obtain refinancing for the loan from Compass Bank, which she could not obtain in her capacity as personal representative, and she intended to convey the Property back to the Estate after repaying the loan. After learning what Oskins had done, four of the beneficiaries—Donnie Oldfield, Luther Oldfield, Catherine Oldfield, and Jo Ann Eastwood—secured counsel, who wrote to Oskins in June 2012, informing her that she had no authority to take this action and demanding that she resign as personal representative. Oskins responded by filing a motion to withdraw as personal representative on July 9, 2012, consenting therein to the appointment of her brother and co-devisee Donnie Oldfield as successor personal representative.[1] The probate court transferred the probate proceeding to district court on August 8, 2012, citing a dispute among the siblings regarding the distribution of the Estate's assets as grounds for the transfer.

**{4}**     The next day, Oskins sold the Property to Defendant Ron Brown, a friend of the late Mr. Oldfield generally acquainted with the family. Oskins, along with her sister, co-devisee, and, at one point in this litigation, codefendant, Jessie Fields, had gone to Compass Bank around the middle of July 2012 to discuss the Property and learned that it was in foreclosure. There, they encountered Brown, who expressed interest in buying the Property.

**{5}**     Brown had come to Compass Bank to inquire about the Property after hearing that it was in foreclosure. While there, Brown was informed by Compass Bank officials that the Property was in foreclosure and that it was available for purchase. Brown then

---

[1]Donnie Oldfield passed away during the course of this litigation and was succeeded as personal representative by Plaintiffs Jo Ann Eastwood and Catherine Oldfield.

accompanied Oskins and Fields to meet, separately, with the judge in the county probate proceeding, whom he asked whether "the ability of the bank to sell [the Property] at a foreclosure" would be affected by the fact that "this [was] in probate and going to district court."[2] The judge responded that it would not because "the foreclosure and the probate [were] two entirely different things." In the time between these meetings and the August 9 closing, Brown pursued his interest in the Property. Brown obtained a copy of an appraisal of the Property, which he personally valued at $50,000 to $55,000, from Oskins, paying her $500 as reimbursement for the expenses incurred in obtaining it despite her telling him that she did not want payment. Brown paid an additional $500 to Fields for her help in obtaining the release of a previously paid-off mortgage from a company in Albuquerque. He called Compass Bank's offices in Alabama and was informed by someone in its legal department that the Property was foreclosed and that he could buy it. And he hired Ekmar Abstract & Title Company (Ekmar) to conduct a title search and handle the transaction on his behalf.

{6}     The closing took place as scheduled in Ekmar's offices with Oskins and Brown attending at separate times. At the closing, Oskins executed a second quitclaim deed to herself to correct an error in the legal description of the property in the quitclaim deed. Oskins then signed a purchase contract and executed a warranty deed conveying the Property to Brown. Oskins did this at the direction of Ekmar, and she believed that Compass Bank was the seller in the transaction, with her involvement nonetheless required because the deed was in her name and because she was personal representative. The sales contract and the warranty deed conveying the property to Brown identify Oskins as "Seller," as do numerous other documents involved in the closing.

{7}     For his part, Brown tendered a check in the amount of $19,116.77 to Ekmar, which subsequently wired $18,140.02 to Compass Bank as payoff of the outstanding loan while keeping the difference as payment for its services and recording costs. Brown did not read any of the documents presented to him at the closing, although he had the opportunity to do so, and Brown signed the warranty deed in the belief that he had purchased the Property from Compass Bank.

{8}     Plaintiffs filed a motion to remove Oskins as personal representative after the transfer, and, following a hearing, the district court entered an order removing Oskins as personal representative of the Estate on October 15, 2012. Plaintiffs subsequently sued

---

2Because Plaintiffs do not argue the point, this opinion does not address whether Brown's awareness that the Property was "in probate and going to district court" constituted actual knowledge of an outstanding claim affecting title to the Property or whether actual knowledge of such a claim would have the same effect as the constructive knowledge imputed to buyers by the lis pendens statute. *See* NMSA 1978, § 38-1-14 (1965) (providing, in pertinent part, that a plaintiff in any action "affecting the title to real estate in this state" may record a notice of lis pendens, which "shall be constructive notice to a purchaser or encumbrancer of the property concerned[,]" and that "any person whose conveyance is subsequently recorded shall be considered a subsequent purchaser or encumbrancer and shall be bound by all the proceedings taken after the recording of the notice to the same extent as if he[ or she] were made a party to the said action"); *cf. Assocs. Fin. Servs. of Am., Inc. v. D.C.*, 689 A.2d 1217, 1222 (D.C. 1997) (equating actual notice with notice pursuant to the District of Columbia's recording statutes).

both Oskins and Brown in a separate action, alleging, among other things, that Oskins had breached her fiduciary duty to the Estate. Plaintiffs sought to set aside the conveyance from Oskins to Brown and return the Property to the Estate. The case was tried in the district court, with Brown and Oskins, represented by the same attorney, presenting a joint defense: that Brown had purchased the property from Compass Bank, rather than Oskins, with both disclaiming any knowledge to or reason to know the contrary.

**{9}** Following the bench trial, the district court determined that the fair market value of the Property was $55,000, less the mortgage and costs totaling $19,032, for a "net fair market value of $35,968." The court ruled that Oskins had breached her fiduciary duty as personal representative by "improperly convey[ing] the major asset of the [E]state to . . . Brown" and that Oskins was liable to the Estate for $32,370 in damages caused by this breach. It concluded, however, that Plaintiffs were not entitled to void the deed from Oskins to Brown because Brown was a bona fide purchaser for value. Plaintiffs appealed.[3]

## STANDARD OF REVIEW

**{10}** The district court did not enter findings of fact to support its conclusion that Plaintiffs were not entitled to void the deed from Oskins to Brown. Although this complicates our review of the issue, "the absence of findings of fact and conclusions of law does not operate as a bar to appellate review," *Jury v. Jury*, 2017-NMCA-036, ¶ 27, 392 P.3d 242, when we can determine from the record that the district court has "resolve[d] the material issues in a meaningful way[,]" *Montoya v. Medina*, 2009-NMCA-029, ¶ 5, 145 N.M. 690, 203 P.3d 905 (alteration, internal quotation marks, and citation omitted), leaving no "genuine issue" as to the facts underlying its decision, *Cockrell v. Cockrell*, 1994-NMSC-026, ¶ 5, 117 N.M. 321, 871 P.2d 977. We understand the facts and testimony outlined above to be undisputed[4] and therefore conclude that the record is adequate to permit our review. "We review de novo the district court's application of

---

3The district court ratified several prior distributions made by Oskins as personal representative and ruled that the devisees could disclaim their interest in the damages awarded at trial. Plaintiffs challenge the district court's authority to reach these issues. Based on our review of the record, the parties did not submit either of the challenged issues to the district court for determination, and Defendants agree that the district court should not have reached them. We therefore vacate the pertinent portions of the district court's judgment without addressing them further.

Plaintiffs also contend that the district court erred in offsetting the mortgage debt and closing costs against their damages award. However, Plaintiffs' entire argument on this point turns on the assertion that the district court took these sums into account when determining the *value* of the Property. That is not what occurred below. Instead, the district court determined that the value of the Property was $55,000 and then determined that the amount of *damages* that would make Plaintiffs whole was $55,000 less the mortgage debt and the closing costs. Since Plaintiffs fail to develop their argument that this method of determining damages (as opposed to valuing the Property) was erroneous, we affirm the district court on this issue. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076.

4Although he contended at trial that he had purchased the Property from Compass Bank, Brown does not deny on appeal that he purchased the Property from Oskins, and we view the district court's determination that Oskins conveyed the Property to Brown in breach of her fiduciary duty to be binding on the issue.

law to the facts[,]" *Giant Cab, Inc. v. CT Towing, Inc.*, 2019-NMCA-072, ¶ 6, 453 P.3d 466, giving it no deference. *Chapman v. Varela*, 2009-NMSC-041, ¶ 5, 146 N.M. 680, 213 P.3d 1109; *see also Kokoricha v. Estate of Keiner*, 2010-NMCA-053, ¶ 11, 148 N.M. 322, 236 P.3d 41 ("If no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review." (alteration, internal quotation marks, and citation omitted)). Insofar as our review involves issues of statutory interpretation, our review is likewise de novo. *Moongate Water Co. v. City of Las Cruces*, 2013-NMSC-018, ¶ 6, 302 P.3d 405.

## DISCUSSION

**{11}** At common law, a conveyance of property made in violation of a fiduciary duty rendered the conveyed title voidable until it passed into the hands of a good-faith or bona fide purchaser, also called a purchaser without notice. *See* Restatement (Second) of Trusts § 288 (1959) ("If [a] trustee in breach of trust transfers trust property to a person who takes with notice of the breach of trust, the transferee does not hold the property free of the trust, although he paid value for the transfer."); *Kokoricha*, 2010-NMCA-053, ¶ 26 ("[T]here can be no cancellation of a voidable deed where there has been a sale to a good-faith bona fide purchaser."). An inquiry notice standard governed whether a purchaser had acted in good faith: a person could not be a bona fide purchaser if the person was aware of "facts [that] should have [led] to an inquiry, which if pursued with due diligence, would have led [the person] to [know]" of the defect in title resulting from the breach of duty. *Dunne v. Petterman*, 1948-NMSC-035, ¶ 7, 52 N.M. 284, 197 P.2d 618. Thus, where a purchaser's failure to inquire "amount[ed] to gross or culpable negligence," the law charged the purchaser with "knowledge of all the facts which the inquiry, pursued with reasonable diligence, would have revealed." *Sawyer v. Barton*, 1951-NMSC-070, ¶ 13, 55 N.M. 479, 236 P.2d 77; *see also City of Rio Rancho v. Amrep Sw. Inc.*, 2011-NMSC-037, ¶ 26, 150 N.M. 428, 260 P.3d 414.

**{12}** The question Plaintiffs ask this Court is whether the district court erred in ruling that Brown was a bona fide purchaser under that doctrine as it existed at common law. We think the answer to that question is irrelevant. We may affirm the district court if its ruling is "right for any reason" as long as our reliance on a ground for affirmance not relied on by the district court is supported by substantial evidence and fair to the appellant. *Freeman v. Fairchild*, 2018-NMSC-023, ¶ 30, 416 P.3d 264. Applying this doctrine in light of the arguments properly presented on appeal, we conclude that the Uniform Probate Code (UPC), NMSA 1978, §§ 45-1-101 to -7-612 (1975, as amended through 2012), rather than the common law, governs this case and that the UPC shields Brown from Plaintiffs' claim for return of the Property.[5]

**{13}** Within the UPC, Section 45-3-910 provides that a "purchaser" for "value" from the "distributee" of an estate "takes title free of [the] rights of any interested person in the

---

5The UPC applies to, among other things, "the affairs and estates of decedents . . . domiciled in New Mexico" and to "the property of nonresidents located in New Mexico or property coming into the control of a fiduciary who is subject to the laws of New Mexico." Section 45-1-301(1)-(2). There is no dispute that the UPC generally governs this case.

estate and incurs no personal liability to the estate, or to any interested person," regardless of "whether . . . the distribution was proper." The statute explicitly "protects a purchaser from . . . a distributee who, as personal representative, has executed a deed of distribution to himself [or herself]," and a purchaser "need not inquire whether a personal representative acted properly in making the distribution in kind, even if the personal representative and the distributee are the same person." *Id.* Although the UPC imposes a good faith requirement on third parties who deal with a personal representative, *see* § 45-3-714(A) ("A person who *in good faith* . . . deals with [a personal representative] for value is protected as if the personal representative properly exercised [a] power." (emphasis added)), Section 45-3-910 does not mention one, and we presume that this omission was intentional.[6] *See State v. Jade G.*, 2007-NMSC-010, ¶ 28, 141 N.M. 284, 154 P.3d 659 ("[W]hen the Legislature includes a particular word in one portion of a statute and omits it from another portion of that statute, such omission is presumed to be intentional."). In light of this omission, we conclude that the common law inquiry notice standard did not survive the enactment of Section 45-3-910 where a purchaser for value obtains title from a distributee. Consequently, if Brown was a "purchaser" for "value" and Oskins a "distributee," Section 45-3-910 bars Plaintiffs from recovering the Property notwithstanding Oskins's breach of her fiduciary duty.

**{14}** The rule that only a purchaser for value is protected from the claims of those to whom a fiduciary duty has been breached is a holdover from the common law, rather than a statutory innovation. *See Sawyer*, 1951-NMSC-070, ¶ 21 (holding that the plaintiff did not have the "character of a bona fide purchaser for value without notice"). *See generally*, § 45-1-103 ("The principles of law and equity supplement the [UPC's] provisions, unless specifically displaced by particular provisions of the code."); *Cadle Co. v. Seavall*, 2019-NMCA-062, ¶ 7, 450 P.3d 471 ("Where a statute touches an issue in the common law, we interpret the statute's language in the context of that law." (internal quotation marks and citation omitted)). Thus, in ruling that Plaintiffs were not entitled to void the conveyance from Oskins to Brown, the district court implicitly concluded that Brown's payment of roughly $19,000 for title to the Property made him a purchaser for value within the meaning of the statute.

**{15}** We agree with that conclusion. *Cf. Chesher v. Shafter Lake Clay Co.*, 1941-NMSC-035, ¶ 20, 45 N.M. 419, 115 P.2d 636 ("[N]o one can successfully contend that a two thousand five hundred dollar cash consideration is not a valuable one."); *Kokoricha*, 2010-NMCA-053, ¶ 27 (holding that the appellants "gave value . . . by paying [the g]rantors $88,000"). Brown's payment, though well below what the district court determined to be the fair value of the Property, constitutes "value" nonetheless. *See* Restatement (Second) of Trusts § 298 (1958) ("If money is paid . . . as consideration for the transfer of trust property, the transfer is for value."); *cf. Chesher*, 1941-NMSC-035, ¶

---

[6]Oskins remained the personal representative of the Estate at the time she transferred the Property to Brown. *See* § 45-3-610(C). Plaintiffs neither argue that Brown's dealings with Oskins should be evaluated under the "good faith" standard applicable to persons who "deal[] with" personal representatives, § 45-3-714(A), nor explain how we can conclude that Brown knew Oskins was still the personal representative at the time of the sale. We consequently find it unnecessary to address the interplay between the standards of conduct applicable to third parties who deal with distributees and third parties who deal with personal representatives when a distributee and a personal representative are the same person.

20 ("Mere inadequacy does not detract from the character of a consideration as a valuable one."). *Compare* § 45-3-910 (protecting "purchaser[s]" for "value"), *with Ellen Equip. Corp. v. C.V. Consultants & Assocs., Inc.*, 2008-NMCA-057, ¶ 1, 144 N.M. 55, 183 P.3d 940 (discussing a statute permitting a creditor to void a transfer by a debtor where, among other things, a debtor does not receive "*reasonably equivalent* value" in exchange for the transfer (emphasis added)). And the fact that Oskins received none of Brown's payments has no bearing on whether Brown qualified as a purchaser for value. *See* Restatement (Third) of Restitution and Unjust Enrichment § 68 cmt. b (2011) (noting that "the definitions of 'value' are tests to determine whether the purchaser has changed position in such a way that avoidance of the transaction . . . would be prejudicial to the purchaser"); 92A C.J.S. *Vendor & Purchaser* § 550 (2020) ("The requirement of valuable consideration is met where the grantee would be left in a worse condition than before he or she purchased the property by annulling the conveyance[.]"); 77 Am. Jur. 2d *Vendor & Purchaser* § 399 (2016) ("A 'valuable consideration,' for purposes of determining if one is a bona fide purchaser of real property, is paid by one who, at the time of his purchase . . . does some . . . act which, if his purchase were set aside, would leave him in a worse position than that which he occupied before the purchase.").

**{16}**    The only remaining question thus becomes whether Defendant Oskins was a "distributee" within the meaning of the statute. She unquestionably was. The undisputed evidence demonstrates that Oskins, as personal representative, deeded the property to herself. *See* § 45-1-201(A)(12) (providing that a "distributee" is "a person who has received property of a decedent from the decedent's personal representative other than as a creditor or purchaser"). Section 45-3-910 explicitly protects a purchaser involved in the precise transaction at issue here: a purchase made from "a distributee who, as personal representative, has executed a deed of distribution[7] to himself [or herself.]"

**{17}**    Because the undisputed evidence demonstrates that Brown was a purchaser for value and that Oskins was a distributee, Brown took title, notwithstanding Oskins's breach of her fiduciary duty,[8] without "incur[ring any] liability to [Decedent's] estate" under the plain language of Section 45-3-910. We therefore affirm the district court's ruling that that Plaintiffs were not entitled to void Oskins's conveyance of the Property to Brown.

---

[7]Section 45-3-907 provides that a deed of distribution "assign[s], transfer[s,] or releas[es] . . . assets to the distributee as evidence of the distributee's title to the property."

[8]The district court ruled that Oskins had breached her fiduciary duty to the Estate by conveying the Property to Brown for an inadequate price without addressing Oskins's conveyance of the Property to herself. For purposes of our analysis, however, this self-conveyance was the only relevant breach—and an apparent one, at that. *See Miller v. Bank of Am., N.A.*, 2015-NMSC-022, ¶ 10, 352 P.3d 1162 (discussing the no-further-inquiry rule). *See generally* § 45-3-703(A) ("A personal representative is a fiduciary who shall observe the same standards of care applicable to trustees."). Although Brown was on notice that Oskins had conveyed the Property to herself, *see City of Rio Rancho*, 2011-NMSC-037, ¶¶ 26, 43, Section 45-3-910 enabled him to purchase the Property without fear of adverse claims from the Estate nonetheless. And, as explained above, *see supra* note 6, Plaintiffs have given us no basis for concluding that Brown was aware of Oskins's ongoing status as personal representative at the time of the sale. In view of the omission of any good faith requirement from the language of Section 45-3-910, the low purchase price is irrelevant to our analysis.

**{18}** We decline to address either of Plaintiffs' remaining arguments in support of their contention that the district court erred. In their brief in chief (and implicitly in their reply), Plaintiffs rely on *Nash Finch Co. v. Rubloff Hastings, L.L.C.*, 341 F.3d 846, 850-51 (8th Cir. 2003), to argue that, "[i]f a purchaser is aware or should have been aware of a mutual mistake underlying a real estate transaction, the purchaser is not afforded protection as a bona fide purchaser." But that case, as relevant, stands only for the proposition that the assignee of a contractual interest obtains rights under the contract as written when the assignee pays value for the assignment without notice of a mistake in expression. *See id.* at 851 ("[The purchaser] was unaware of the mistake contained in the leases and was therefore a bona-fide purchaser of the leasehold interest, taking the interest free of any undisclosed equities."). We assume for purposes of this opinion that Plaintiffs have standing to seek reformation of the contract between Oskins and Brown. Nevertheless, we do not think that Plaintiffs' reliance on *Nash Finch Co.* aids them in any way. The "mistake" Plaintiffs are alleging is not one in *expression*, but one in contract *formation*: Plaintiffs assert (in line with Oskins's trial testimony) that Oskins did not understand that she was entering into a contract to sell the Property at all. If that mistake were proven, and if Plaintiffs proved that Brown knew or had reason to know of that mistake, it would not entitle Plaintiffs to rescind the contract between Oskins and Brown, which is the remedy they purport to seek. Instead, it would mean that Oskins and Brown had not entered into a contract in the first place. *See* Restatement (Second) of Contracts § 20(1) (1981) ("There is no manifestation of mutual assent to an exchange if the parties attach materially different meanings to their manifestations and . . . each party knows or each party has reason to know the meaning attached by the other."). Plaintiffs fail to explain how we can determine from this record that Brown knew or had reason to know that Oskins was unaware she was entering into a contract when the purchase contract, the warranty deed, and all of the other paperwork surrounding the transaction listed Oskins as the seller. And Plaintiffs neither argue nor cite any authority in support of the proposition that they would be entitled to recover the Property from Brown if they could prove that he never entered into a contract with Oskins. We decline to develop such arguments on Plaintiffs' behalf. *See Headley*, 2005-NMCA-045, ¶ 15.

**{19}** Plaintiffs' final argument comes in response to our supplemental briefing order, in which we asked the parties to address "whether . . . Section 45-3-910 . . . applies to this case" out of considerations of fairness arising from the fact that the applicability of the statute had not been litigated below. *See generally Freeman*, 2018-NMSC-023, ¶ 30. But it, too, is inadequately developed to warrant review. Plaintiffs appear to contend that Section 45-3-910 does not protect Brown because he engaged in fraud. They invoke Section 45-1-106(A), which provides, as pertinent, that where there is "fraud . . . perpetrated in connection with any proceeding or in any statement filed under the [UPC,] or [where] fraud is used to avoid or circumvent [the UPC's] provisions or purposes[,]" an injured person "may obtain appropriate relief against the perpetrator of the fraud[,] including restitution from any person (other than a bona fide purchaser) benefiting from the fraud, whether innocent or not." *See generally Eoff v. Forrest*, 1990-NMSC-033, ¶¶ 10-11, 109 N.M. 695, 789 P.2d 1262 (holding that "the well-established requirements under New Mexico law for an action based on fraud apply to a claim of fraud asserted under Section 45-1-106(A)[,]" including a claim premised on fraud on the

court, and that the fraud must be shown by clear and convincing evidence). Yet the entirety of Plaintiffs' argument consists of a recitation of the statute. To address the merits of this issue, we would have to hazard guesses about what arguments Plaintiffs might make—an approach that "creates a strain on judicial resources and a substantial risk of error." *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53. We therefore decline to decide whether Section 45-1-106 applies to the facts of this case.[9] *See Elane Photography*, 2013-NMSC-040, ¶ 71.

## CONCLUSION

{20}    We affirm the district court's judgment regarding Brown's ownership of the Property. However, we vacate the judgment to the extent that it ratifies prior distributions made by Oskins as personal representative and enables Decedent's devisees to disclaim their interest in the district court's damage award.

## {21}    IT IS SO ORDERED.

---

9Because, as noted above, Plaintiffs have failed to demonstrate that Brown was aware that Oskins was the personal representative of the Estate, our opinion should not be read to suggest that a purchaser from a personal representative can, regardless of other circumstances surrounding the transaction, avoid any applicable good faith requirement through the simple expedient of having a personal representative improperly self-distribute property before conveying the property to the purchaser. There is no evidence in this record that the self-conveyance occurred at Brown's behest, and although Plaintiffs alleged a fraud claim in their complaint, they have not appealed the district court's dismissal of that claim following trial. We express no view as to the considerations relevant to determining whether a purchaser from a personal representative has acted in good faith. *See* § 45-3-714 ("A person who *in good faith* . . . deals with [a personal representative] for value is protected as if the personal representative properly exercised his power. The fact that a person knowingly deals with a personal representative does not alone require the person to inquire into the existence of a power or the propriety of its exercise." (emphasis added)). *Compare* 1 Uniform Probate Code Practice Manual 407 (Richard V. Wellman ed., 2d ed. 1977) ("Section 3-714 [of the Uniform Probate Code] explicitly protects purchasers from the possibility that a sale which a [personal representative] may have made was unnecessary or at too low a price or even against the terms of a will."), *and* Unif. Probate Code § 3-713 cmt. (1972) ("If a personal representative violates the duty against self-dealing . . . , a voidable title to assets sold results. Other breaches of duty relating to sales of assets will not cloud titles except as to purchasers with actual knowledge of the breach."), *with* Restatement (Third) of Restitution and Unjust Enrichment § 69 reporter's note b (2011) ("[It] is doubtful whether [Section 3-714 of the Uniform Probate Code and similar] enactments alter traditional standards of constructive or inquiry notice, so long as the traditional standards are reasonably applied."); 5 Austin Wakeman Scott et al., *Scott and Ascher on Trusts* § 29.2.5 n.5 (5th ed. 2008) ("A purchaser of trust property who knows that the trustee is selling at an inadequate price is not a bona fide purchaser."); *and* Restatement (Second) of Trusts § 297 cmt. a (1959) (stating that "whether the trustee is disposing of the property for much less than its real value" is "[a]mong the circumstances which are or may be of importance" in determining whether a third person has notice of a breach of trust). Nor do we address whether a buyer claiming title under documents clearly identifying the source of that title may thereafter claim protection as a good faith purchaser on the ground that the buyer was unaware of the identity of the person the buyer was receiving title from. *But cf*. Restatement (Third) of Restitution and Unjust Enrichment § 69 cmt. c ("In [some] situations the law of notice . . . is manifestly indifferent to questions of actual knowledge, subordinating individual equities to the interests of predictability, finality, and ease of adjudication."); *id*. cmt. c, illus. 2; *Smith v. Price's Creameries*, 1982-NMSC-102, ¶ 13, 98 N.M. 541, 650 P.2d 825 ("Each party to a contract has a duty to read and familiarize himself with its contents before he signs and delivers it[.]").

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**MEGAN P. DUFFY, Judge**